**DeCONCINI McDONALD YETWIN & LACY, P.C.**
2525 East Broadway, Suite 200
Tucson, Arizona 85716-5300
Telephone: 520-322-5000
Facsimile: 520-322-5585

LISA ANNE SMITH, AZ Bar No. 016762
(lsmith@dmyl.com)
SHEFALI MILCZAREK-DESAI, AZ Bar No. 021237
(smdesai@dmyl.com)

**PERKINS COIE LLP**
101 Jefferson Drive
Menlo Park, California 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350
*Pro hac vice admission pending*

PAUL J. ANDRE, CA Bar No. 196585
(pandre@perkinscoie.com)
LISA KOBIALKA, CA Bar No. 191404
(lkobialka@perkinscoie.com)
ESHA BANDYOPADHYAY, CA Bar No. 212249
(ebandyopadhyay@perkinscoie.com)
SEAN BOYLE, CA Bar No. 238128
(sboyle@perkinscoie.com)

Attorneys for Plaintiff
THE FREECYCLE NETWORK, INC.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| THE FREECYCLE NETWORK, INC., an Arizona non-profit organization,<br><br>Plaintiff,<br><br>v.<br><br>TIM OEY, an individual<br><br>Defendant. | CASE NO. 06-CV-00173-RCC<br><br>THE FREECYCLE NETWORK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION<br><br>Date: April 24, 2006<br>Time: 2:00 p.m.<br>Before: Honorable Raner C. Collins<br>Location: Courtroom 5B |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION                    [BY06 1010 158]

Case 4:06-cv-00173-RCC    Document 7    Filed 04/19/2006    Page 1 of 18

Dockets.Justia.com

# TABLE OF CONTENTS

| | | | PAGE |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF FACTS | | 2 |
| | A. | Plaintiff The Freecycle Network and its Marks | 2 |
| | B. | Defendant Tim Oey | 3 |
| | C. | Defendant's Unlawful Conduct and the Repercussions Therefrom | 4 |
| III. | ARGUMENT | | 5 |
| | A. | The Freecycle Network is Likely to Prevail on the Merits of Its Claims | 6 |
| | | 1. The Freecycle Network is Likely to Succeed on the Merits of its Contributory Trademark Infringement Cause of Action | 6 |
| | | 2. The Freecycle Network is Likely to Succeed on the Merits of its Trademark Disparagement Claim | 7 |
| | | 3. The Freecycle Network is Likely to Succeed on the Merits of its Injurious Falsehood Claim | 8 |
| | | 4. The Freecycle Network is Likely to Succeed on the Merits of its Defamation Claim | 10 |
| | B. | The Irreparable Harm to The Freecycle Network Strongly Favors Issuing a Temporary Restraining Order | 11 |
| | C. | The Balance of Hardships Weighs Strongly in Favor of The Freecycle Network | 12 |
| | D. | The Freecycle Network is Entitled to a Temporary Restraining Order | 13 |

i

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

[NYC:1010 158]

Case 4:06-cv-00173-RCC   Document 7   Filed 04/19/2006   Page 2 of 18

# TABLE OF CONTENTS

PAGE

**Cases**

Benda v. Grand Lodge of IAM,
    584 F.2d 308 (9th Cir.1978) ............................................................................ 6

Big O Tire Dealers, Inc. v. The Goodyear Tire & Rubber Co.,
    561 F.2d 1365 (10th Cir. 1977) ....................................................................... 7

Brookfield Comms., Inc. v. West Coast Entm't Corp.,
    174 F.3d 1036 (9th Cir. 1999) ..................................................................... 5, 11

Dogloo, Inc. v. Doskocil Mfg. Co., Inc.,
    893 F.Supp. 911 (C.D.Cal. 1995) ..................................................................... 6

Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.,
    109 F.3d 1394 (9th Cir. 1997) ......................................................................... 12

El Pollo Loco, Inc. v. Hashim,
    316 F.3d 1032 (9th Cir. 2003) ......................................................................... 11

Fed. Deposit Ins. Corp. v. Garner,
    125 F.3d 1272 (9th Cir. 1997) ......................................................................... 5

Fillmore v. Maricopa Water Processing Systems, Inc.,
    211 Ariz. 269 (2005) ........................................................................................ 9

Gee v. Pima County,
    126 Ariz. 116 (Ariz.Ct.App. 1980) ................................................................ 8

Gilder v. PGA Tour, Inc.,
    936 F.2d 417 (9th Cir. 1991) ........................................................................... 6

GoTo.com, Inc. v. Walt Disney Co.,
    202 F.3d 1199 (9th Cir. 2000) ......................................................................... 11

Granny Goose Foods, Inc. v. Bhd. of Teamsters,
    415 U.S. 423 (1974) ........................................................................................ 13

Inwood Labs., Inc. v. Ives Labs., Inc.,
    456 U.S. 844 (1982) ........................................................................................ 6

Johnson v. California State Bd. of Accountancy,
    72 F.3d 1427 (9th Cir. 1995) ........................................................................... 6

Lockheed Martin Corp. v. Network Solutions, Inc.,
    194 F.3d 980 (9th Cir. 1999) ........................................................................... 6

i

Metro Publ'g Ltd. v. San Jose Mercury News,
	987 F.2d 637 (9th Cir. 1993) ........................................................................... 5

Miller v. Servicemaster By Rees,
	174 Ariz. 518 (Ariz.Ct.App. 1993) ................................................................ 10

Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,
	944 F.2d 597 (9th Cir. 1991) ......................................................................... 12

San Diego Comm. Against Registration & the Draft v. Governing Board of
	the Grossmont Union High Sch. Dist.,
	790 F.2d 1471 (9th Cir. 1986) (citation omitted) ........................................... 5

Sealy, Inc. v. Easy Living, Inc.,
	743 F.2d 1378 (9th Cir. 1984) ......................................................................... 6

Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,
	240 F.3d 832 (9th Cir. 2001) ..................................................................... 5, 13

Western Techs., Inc. v. Sverdrup & Parcel, Inc.,
	154 Ariz.1 (Ariz.Ct.App. 1986) ...................................................................... 9

Wilson v. Watt,
	703 F.2d 395 (9th Cir.1983) ........................................................................... 6

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC    Document 7    Filed 04/19/2006    Page 4 of 18

# I. INTRODUCTION

This is a case about revenge. Defendant Tim Oey, ("Defendant" or "Oey"), frustrated that he was asked to step down from a leadership position in The Freecycle Network, Inc. ("The Freecycle Network"), seeks to destroy its valuable trademarks, which The Freecycle Network owns after extensive use and development of valuable goodwill. The Freecycle Network coordinates programs throughout the world to promote the reusing, recycling, and gifting of goods. Protection of The Freecycle Network's trademark rights is essential in order to properly identify legitimate members of The Freecycle Network, and to accomplish its goal of centralized coordination of recycling services. Indeed, the Freecycle Network has strict guidelines as to the use of its trademarks. Additionally, The Freecycle Network actively polices potentially infringing uses of its trademarks. As a result, The Freecycle Network has been able to obtain corporate sponsorship and funding which enables it to cover its administrative costs.

Defendant publicly recognized the validity of The Freecycle Network's trademarks on numerous occasions while he was affiliated with The Freecycle Network. Upon being asked to step down from The Freecycle Network, however, Defendant began to misuse the trademarks, and consistently ignored requests to cease such misuse. Moreover, Defendant openly admits that he has encouraged others to infringe the marks by stating "...I have encouraged people to use the term freecycle as a generic term which would block The Freecycle Network (TFN), and all others, from holding a trademark...." *See* Complaint, Exh. F.[1] Additionally, Defendant has targeted individuals dedicated to the active promotion of reusing, recycling, and gifting, and has encouraged them to join an opposition filed by the Yahoo! group FreecycleSunnyvale with the Trademark Trial and Appeal Board ("TTAB") regarding the registration of The Freecycle Network's trademarks.[2] Furthermore, Defendant has made and disseminated false statements about The Freecycle Network and its trademarks.

---

[1] "Complaint" refers to The Freecycle Network's Complaint in this action, filed on April 4, 2006. Declaration of Esha Bandyopadhyay in Support of The Freecycle Network, Inc.'s *Ex Parte* Motion for Temporary Restraining Order and Motion for Preliminary Injunction ("Bandyopadhyay Decl."), ¶2, Exh. A.

[2] FreecycleSunnyvale filed its opposition on January 18, 2006. Declaration of Deron Beal (hereinafter "Beal Decl.") filed herewith, ¶6, Exh. H.

- 1 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC   Document 7   Filed 04/19/2006   Page 5 of 18

The Freecycle Network has compelling evidence that Defendant has contributorily infringed, and continues to contributorily infringe, upon The Freecycle Network's trademarks. The Freecycle Network has further compelling evidence that Defendant has engaged in disparagement of The Freecycle Network's valid trademarks, injurious falsehood, and defamation. Most notably, this evidence includes Defendant's own admissions of engaging in such conduct. Accordingly, The Freecycle Network respectfully requests entry of a preliminary injunction and temporary restraining order prohibiting Defendant from further engaging in this unlawful conduct.

## II. STATEMENT OF FACTS

### A. Plaintiff The Freecycle Network and its Marks

The Freecycle Network is a nonprofit Arizona corporation with member groups throughout the world dedicated to encouraging and coordinating the reusing, recycling, and gifting of goods. Beal Decl., ¶2. Starting with a single recycling community in Tucson, The Freecycle Network has grown to a worldwide organization with thousands of local recycling groups, and more than two million individual members. *Id.* The Freecycle Network maintains an Internet Web site, located at www.freecycle.org, which maintains a directory of local recycling groups throughout the world and provides resources for volunteers to create new local recycling groups. *Id.*, ¶3. Because of its efforts toward such laudable goals, The Freecycle Network has successfully obtained corporate sponsorship to cover its administrative expenses and enable it to continue promoting recycling, reusing, and gifting of goods. *Id.*, ¶4.

The Freecycle Network has been using the trademarks FREECYCLE, THE FREECYCLE NETWORK, and the distinctive "The Freecycle Network" logo (collectively "The Freecycle Network's Marks" or the "Marks") exclusively and continuously since at least May 1, 2003. *Id.*, ¶5. The Freecycle Network has strict guidelines as to the use of the Marks, and expends much effort in policing potential infringement of the Marks. *Id.*, ¶5, Exhs. E-F.

As a result of its extensive use and promotion of the Marks, The Freecycle Network has built up and now owns valuable goodwill that is symbolized by these trademarks. For example, publications such as CNN.com, The Motley Fool, CBS News, and The Washington Post have

- 2 -
MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC   Document 7   Filed 04/19/2006   Page 6 of 18

praised The Freecycle Network and its efforts in promoting the reusing, recycling, and gifting of goods. *Id.*, ¶2, Exhs. A-D. Furthermore, the Marks comprise an important portion of The Freecycle Network's intellectual property and are very important to The Freecycle Network's identity. *See id.*, ¶6. On November 22, 2005, The Freecycle Network's FREECYCLE trademark and distinctive logo were approved for publication on the Principal Register by the United States Patent and Trademark Office ("PTO"). *Id.*, ¶6, Exh. G. A notice of publication was issued on December 28, 2005. *Id.* Subsequently, however, an opposition proceeding was instituted on January 18, 2006, in regard to the registration of the FREECYCLE mark. *Id.*, ¶6, Exh. H. Accordingly, federal registration of The Freecycle Network's Marks is pending. *Id.*, ¶6.

The Freecycle Network gives its local groups permission to use the Marks for local promotions of programs that encourage reusing, recycling, and gifting. *Id.*, ¶7. Accordingly, The Freecycle Network's Marks are used to identify local recycling organizations which participate within The Freecycle Network organization. *Id.* The Freecycle Network's Marks are further used by The Freecycle Network to promote recycling of usable items within a community. *Id.* Individual recyclers rely on the Marks to know that they are dealing with a local organization affiliated with the well-known The Freecycle Network. *Id.*

**B.    Defendant Tim Oey**

Defendant was an active member of The Freecycle Network from early 2004 until late 2005. *Id.*, ¶8. During this time, Defendant held a variety of positions within The Freecycle Network, one of which involved participating in an intellectual property working group tasked with developing guidelines for protecting The Freecycle Network's intellectual property (including The Freecycle Network's Marks). *Id.* In fact, Defendant vigorously defended The Freecycle Network's rights to The Freecycle Network's Marks in public e-mail exchanges and various Internet for a while he was a member of The Freecycle Network. *Id.* For example, in an e-mail dated September 17, 2004, Defendant stated, in pertinent part, "Everyone in the Freecycle network needs to protect the "Freecycle" trademark." *See* Complaint, Exh. A. Additionally, Defendant prepared trademark protection guidelines in order to preserve The Freecycle Network's Marks. Beal Decl., ¶8. In an e-mail dated January 5, 2005, he wrote a list of

- 3 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC    Document 7    Filed 04/19/2006    Page 7 of 18

guidelines entitled "How To Protect the Freecycle Trademark." *See* Complaint, Exh. B. In fact, there is no doubt Defendant believed The Freecycle Network's Marks are valid and worthy of protection. *See* Complaint, Exh. C ("...the Freecycle trademark...is real, Freecycle is using it, and has the right to defend it to a degree even without registration").

C.  **Defendant's Unlawful Conduct and the Repercussions Therefrom**

On or around September 15, 2005, Defendant was asked to resign from his position at The Freecycle Network due to behavior contrary to The Freecycle Network's mission. *See* Complaint, Exh. D; *see also* Beal Decl., ¶9. Around this time, Defendant began to publicly disagree with the validity of The Freecycle Network's Marks and started to encourage the destruction of The Freecycle Network's Marks. *Id.* Specifically, Defendant has engaged in a systematic campaign to destroy the value of The Freecycle Network's Marks. *Id.* To this end, Defendant has intentionally made false statements about the validity of The Freecycle Network's intellectual property, including the Marks. *Id.* These statements include assertions that The Freecycle Network does not possess valid trademark rights in the Marks, assertions that at least one of the Marks (specifically the FREECYCLE mark) is a generic term, and assertions that third parties can freely use the Marks. For example, Defendant has stated, "...it is legal for everyone to use the term freecycle...so have fun with it!" *See* Complaint, Exh. E. In a more bold admission, Defendant stated "...I have encouraged people to use the term freecycle as a generic term which would block The Freecycle Network (TFN), and all others, from holding a trademark...." *See* Complaint, Exh. F. Furthermore, Defendant has encouraged others to misuse the Marks by writing "...please contact all the freecycle groups in your state and surrounding states to let them know that freecycle is a generic term...." *See* Complaint, Exh. G.

Additionally, Defendant has made false public assertions regarding The Freecycle Network itself by stating that it is "doing bad things." *See id.* Despite requests from The Freecycle Network to cease from such false assertions, Defendant continues to misuse the Marks and make false, public statements. Beal Decl., ¶9. Moreover, Defendant has indicated publicly that his campaign against The Freecycle Network is intentional and motivated by malice. For

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC    Document 7    Filed 04/19/2006    Page 8 of 18

example, Defendant has urged other to "[d]rive [The Freecycle Network] nuts." See Complaint, Exh. G.

As a direct result of Defendant's on-going campaign to destroy the value of The Freecycle Network's Marks and cause damage to The Freecycle Network, The Freecycle Network has already lost a significant portion of its corporate sponsorship. Beal Decl., ¶10. Additionally, The Freecycle Network is being irreparably harmed as it is has lost, and continues to lose, the goodwill and reputation associated with the Marks. *Id.*

## III. ARGUMENT

As this Court is aware, to prevail upon a motion for temporary or preliminary injunctive relief, the moving party must show either (1) a combination of probable success and the possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips in its favor. *See* Brookfield Comms., Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999) (granting preliminary injunction in favor of trademark owner); *see also* Metro Publ'g Ltd. v. San Jose Mercury News, 987 F.2d 637, 639 (9th Cir. 1993); Fed. Deposit Ins. Corp. v. Garner, 125 F.3d 1272, 1277 (9th Cir. 1997).[3] The two elements are not separate tests, but rather opposite ends of a single "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." San Diego Comm. Against Registration & the Draft v. Governing Board of the Grossmont Union High Sch. Dist., 790 F.2d 1471, 1473 n.3 (9th Cir. 1986) (citation omitted).

Because The Freecycle Network is likely to succeed on the merits and will suffer irreparable harm if a temporary restraining order does not issue against Defendant, and because the balance of hardships tips sharply in The Freecycle Network's favor, The Freecycle Network's *ex parte* motion should be granted.

**A. The Freecycle Network is Likely to Prevail on the Merits of Its Claims**

---

[3] The standard for issuing a temporary restraining order is substantially the same as the standard for issuing a preliminary injunction. *See* Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

- 5 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC   Document 7   Filed 04/19/2006   Page 9 of 18

To obtain injunctive relief, The Freecycle Network need not show that *it will necessarily prevail on the merits*, only that there is a *reasonable probability* of success. Dogloo, Inc. v. Doskocil Mfg. Co., Inc., 893 F.Supp. 911, 917 (C.D.Cal. 1995) citing Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991); *see also* Wilson v. Watt, 703 F.2d 395 (9th Cir.1983). This standard has been interpreted to mean a "fair chance of success on the merits." Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995); Benda v. Grand Lodge of IAM, 584 F.2d 308, 315-16 (9th Cir.1978). As detailed below, The Freecycle Network has more than a fair chance of success on the merits.

1. **The Freecycle Network is Likely to Succeed on the Merits of its Contributory Trademark Infringement Cause of Action**

One branch of contributory infringement encompasses instances when a defendant "intentionally induces a third party to infringe the plaintiff's mark...." Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 983-84 (9th Cir. 1999). Indeed, the Supreme Court has left little doubt that one who induces another to infringe a trademark will be liable for contributory infringement. Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1382 (9th Cir. 1984); *see also* Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 853-54 (1982) (stating that "if a manufacturer or distributor intentionally induces another to infringe a trademark...the manufacturer or distributor is contributorily responsible....").

Here, Defendant has intentionally induced third parties to infringe the Marks by encouraging misuse of the Marks, and by writing in numerous e-mails and postings that the Marks are not valid, and that The Freecycle Network's claim to them is erroneous. As described above, Defendant's inducement includes intentionally erroneous assertions that The Freecycle Network's Marks are generic and may be freely used by others. *See* Complaint, Exh. E ("...it is legal for everyone to use the term freecycle...so have fun with it!"), Exh. F ("...I have encouraged people to use the term freecycle as a generic term which would block The Freecycle Network (TFN), and all others, from holding a trademark...."), Exh. G ("...please contact all the freecycle groups in your state and surrounding states to let them know that freecycle is a generic

- 6 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC    Document 7    Filed 04/19/2006    Page 10 of 18

term...."). If individuals and entities other than The Freecycle Network begin freely using the Marks in relation to services other than those offered by The Freecycle Network, this will inevitably result in a likelihood of confusion as to the origin of the services. As further detailed above, Defendant's systematic campaign to intentionally destroy The Freecycle Network's intellectual property has resulted in a loss of good will and reputation, as well as a loss in corporate sponsorship. Beal Decl., ¶10.

Given Defendant's own admissions that (1) he has encouraged others to misuse and infringe The Freecycle Network's Marks, (2) he has told others that The Freecycle Network has no right to The Freecycle Network's Marks, and (3) he has organized a coordinated attack on The Freecycle Network's Marks which is resulting in massive infringement and damage, there is no doubt that The Freecycle Network will succeed on its claim for contributory trademark infringement.

### 2. The Freecycle Network is Likely to Succeed on the Merits of its Trademark Disparagement Claim

To prevail on its claim for trademark disparagement, the Freecycle Network is required to establish that (i) Defendant made a false statement in regard to The Freecycle Network; (ii) that this false statement was made with malice; and (iii) that The Freecycle Network suffered special damages as a result of the false statement. Big O Tire Dealers, Inc. v. The Goodyear Tire & Rubber Co., 561 F.2d 1365, 1373-74 (10th Cir. 1977).

Here, Defendant has intentionally made numerous false statements about The Freecycle Network's intellectual property, including The Freecycle Network's Marks. These statements include open assertions that the Marks are generic, and that The Freecycle Network does not possess valid rights in these Marks. *See* Complaint, Exh. E ("...it is legal for everyone to use the term freecycle...so have fun with it!"), Complaint, Exh. F ("...I have encouraged people to use the term freecycle..."). These statements are undoubtedly false because The Freecycle Network owns valid rights in the Marks which cannot freely be infringed by the public at large. As stated

- 7 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC    Document 7    Filed 04/19/2006    Page 11 of 18

above, the PTO has recognized the validity of The Freecycle Network's FREECYCLE trademark by approving it for publication on the Principal Register. Beal Decl., ¶6, Exh. C.

Additionally, there is no doubt that Defendant acted with malice in attempting to disparage the Marks. In fact, Defendant admits his malicious intent by acknowledging that his goal is to "block The Freecycle Network (TFN), and all others, from holding a trademark…." Complaint, Exh. F. Similarly, Defendant admits that his intention is to "[d]rive [The Freecycle Network] nuts." Complaint, Exh. G.

Furthermore, The Freecycle Network has and will continue to suffer significant irreparable harm due to Defendant's malicious, false statements. These special damages include, but are not limited to, a loss of goodwill, decreased membership in The Freecycle Network, loss of potential corporate sponsorship, and potential loss of intellectual property rights in The Freecycle Network's Marks. See Beal Decl., ¶10.

As such, The Freecycle Network will succeed on the merits on its trademark disparagement claim. And importantly, it appears that Defendant will continue to recklessly disparage The Freecycle Network's Marks with malice unless restrained by this Court.

### 3. The Freecycle Network is Likely to Succeed on the Merits of its Injurious Falsehood Claim

Injurious falsehood entails an intentional publication of an injurious falsehood disparaging another's property. See Gee v. Pima County, 126 Ariz. 116, 116 (Ariz.Ct.App. 1980). Generally, injurious falsehood is the publication of matter derogatory to the plaintiff's business which is calculated to prevent others from dealing with him. See Western Techs., Inc. v. Sverdrup & Parcel, Inc., 154 Ariz.1, 4 (Ariz.Ct.App. 1986). To prevail on its claim for injurious falsehood, The Freecycle Network must show (i) that Defendant published an injurious falsehood to a third party; (ii) that Defendant knew of the falsity of its statement; (iii) that Defendant made an effort to dissuade a third party from dealing with The Freecycle Network; and (iv) that Defendant's actions resulted in a pecuniary loss to The Freecycle Network.

- 8 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC    Document 7    Filed 04/19/2006    Page 12 of 18

Fillmore v. Maricopa Water Processing Systems, Inc., 211 Ariz. 269 (2005) citing Western Techs., 154 Ariz. at 4.

As describe above, Defendant has published numerous false statements concerning The Freecycle Network and its Marks. *See* Complaint, Exh. E ("...it is legal for everyone to use the term freecycle...so have fun with it!"), Complaint, Exh. G ("[The Freecycle Network] are doing bad things"). Additionally, given Defendant's prior acknowledgement that "...the Freecycle trademark [] ...is real, Freecycle is using it, and has the right to defend it to a degree even without registration" (*see* Complaint, Exh. C), it is clear that Defendant has actual knowledge of the falsity of his statements. Defendant cannot now be permitted to make the Marks generic by encouraging others to destroy the distinctiveness simply because he no longer wants the Marks to be enforced.

Furthermore, in intentionally trying to prevent The Freecycle Network from retaining its valid trademark rights (*see* Complaint, Exh. F, "...I have encouraged people to use the term freecycle as a generic term which ***would block The Freecycle Network (TFN), and all others, from holding a trademark....***" (emphasis added)), Defendant is attempting to terminate The Freecycle Network's contracts and relationships with its corporate sponsors. *See* Beal Decl, ¶10. Because corporate sponsorship is the sole source of funding for The Freecycle Network to continue its work both nationally and internationally, Defendant's intentional interference with such agreements, and an ultimate dissolution of the agreements, would result in a devastating pecuniary loss for The Freecycle Network.

### 4. The Freecycle Network is Likely to Succeed on the Merits of its Defamation Claim

The crux of a defamation claim under Arizona law is whether the statement makes or implies a provable false assertion of fact. *See* Miller v. Servicemaster By Rees, 174 Ariz. 518, 520 (Ariz.Ct.App. 1993). To prevail on such a claim, The Freecycle Network must establish (i) a false and defamatory statement made by Defendant concerning The Freecycle Network; (ii) a nonprivileged publication of that false statement to a third party; (iii) at least negligence on the part of the Defendant; (iv) and harm to The Freecycle Network as a result of the false statement. *Id.*

As set forth above, Defendant has made, and continues to make, false public statements concerning The Freecycle Network and its Marks. *See* Complaint, Exh. E ("…it is legal for everyone to use the term freecycle…so have fun with it!"), Complaint, Exh. G ("[The Freecycle Network] are doing bad things"). Additionally, Defendant was not given permission to make such assertions, and was specifically asked to stop making these false, public assertions. Indeed, Defendant has no right whatsoever to publish these statements. *See* Beal Decl., ¶9. Further, given Defendant's prior acknowledgement that "…the Freecycle trademark [] …is real, Freecycle is using it, and has the right to defend it to a degree even without registration" (*see* Complaint, Exh. C), it is clear that Defendant now makes these false assertions with actual knowledge (not just mere negligence) of the falsity of the statement.

Finally, there can be no doubt that The Freecycle Network is suffering harm from the negative repercussions of Defendant's false statements. The goodwill of the Marks is being eroded, and Defendant's false statements are harming the reputation of The Freecycle Network. Moreover, The Freecycle Network has already suffered a reduction in corporate sponsorship. Beal Decl., ¶10. Accordingly, there is more than a reasonable probability that The Freecycle Network will succeed on its claim of defamation

- 10 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC   Document 7   Filed 04/19/2006   Page 14 of 18

### B. The Irreparable Harm to The Freecycle Network Strongly Favors Issuing a Temporary Restraining Order

It is well established in this Circuit that in cases under the Lanham Act, once a plaintiff establishes likelihood of success on the merits, there arises a presumption that the plaintiff will suffer irreparable harm unless an injunction is entered. *See* Brookfield, 174 F.3d at 1066; *see also* El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1038 (9th Cir. 2003) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 n.4 (9th Cir. 2000)) ("[i]n a trademark infringement claim, 'irreparable injury may be *presumed* from a showing of likelihood of success on the merits.'") (emphasis added). Given The Freecycle Network's strong showing of a likelihood of success on the merits, this presumption is sufficient to support entry of an immediate injunction.

However, even without the presumption, there is more than enough evidence that The Freecycle Network will suffer irreparable harm unless Defendant is immediately enjoined from inducing others to infringe upon The Freecycle Network's Marks. As stated above, here Defendant publicly announced his intention to infringe The Freecycle Network's Marks and encouraged others to do so. Among other examples, Defendant has publicly stated "…I have encouraged people to use the term freecycle as a generic term which would block The Freecycle Network (TFN), and all others, from holding a trademark…." *See* Complaint, Exh. F. Additionally, Defendant has intentionally, knowingly, and maliciously made false and defamatory statements about The Freecycle Network and its Marks. *See, e.g.*, Complaint, Exh. G ("[The Freecycle Network] is doing bad things."). Further, Defendant has publicly admitted that he has chosen to pursue this course of action in order to "[d]rive [The Freecycle Network] nuts." *See id.*

Such conduct is detrimental to the reputation and goodwill of the distinctive Marks, developed over years of using The Freecycle Network's Marks to identify its reusing, recycling and gifting efforts. Moreover, Defendant's actions (as he himself admits) are aimed at destroying the value of The Freecycle Network's Marks. *See* Complaint, Exhs. E, F, and G. Furthermore, as stated above, The Freecycle Network has already suffered a decrease in

- 11 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC   Document 7   Filed 04/19/2006   Page 15 of 18

corporate sponsorship and faces the possibility of a complete withdrawal of all such sponsorship due to Defendant's defamation campaign. Accordingly, it is clear that The Freecycle Network is suffering, and will continue to suffer, irreparable harm as a result of Defendant's conduct. *See, e.g.*, Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (stating that "[d]amage to ...goodwill qualif[ies] as irreparable harm.")

In contrast to the irreparable harm faced by The Freecycle Network as a result of Defendant's contributory infringement of The Freecycle Network's Marks, there is no potential harm to Defendant. As detailed below, Defendant will not be any less able to engage in and promote legitimate reusing, recycling, and gifting efforts, even if it cannot utilize The Freecycle Network's Marks. Additionally, there will be no chilling effect to Defendant's right to free speech; all that The Freecycle Network is seeking is to prevent Defendant from making defamatory statements that are detrimental to its hard-earned reputation and the goodwill of The Freecycle Network's distinctive Marks.

In short, the irreparable harm that The Freecycle Network will sustain absent an immediate injunction far outweighs any inconvenience that Defendant may experience, and therefore, a temporary restraining order and preliminary injunction should be granted in The Freecycle Network's favor.

### C. The Balance of Hardships Weighs Strongly in Favor of The Freecycle Network

Although there is no defined test for determining the balance of hardships, the Ninth Circuit has looked to the goodwill and reputation embodied in a trademark as relevant factors that affect the balance. *See* Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1406 (9th Cir. 1997). As detailed above, The Freecycle Network has suffered, and continues to suffer, significant loss of goodwill and reputation due to Defendant's intentional inducement of others to infringe upon The Freecycle Network's distinctive Marks. Additionally, the Freecycle Network faces the possibility of losing its corporate sponsorship. Beal Decl., ¶10 In contrast to the irreparable harm caused to The Freecycle Network should Defendant be allowed to continue his infringing activity, the proposed temporary restraining order and preliminary injunction will

- 12 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC    Document 7    Filed 04/19/2006    Page 16 of 18

cause Defendant only minimal inconvenience. In particular, Defendant will, in no way, be prevented from engaging in further promotion of reusing, recycling, and gifting efforts even if he cannot utilize The Freecycle Network's Marks. If this Court grants The Freecycle Network's request for a preliminary injunction and temporary restraining order, Defendant will only be prohibited from making false and defamatory statements that affect the hard-earned reputation and goodwill of The Freecycle Network and its distinctive Marks. The Freecycle Network asks only that Defendant be enjoined from intentionally misusing The Freecycle Network's Marks in public fora, and from inducing others to do so with improper and tortious statements and conduct. Accordingly, The Freecycle Network requests that the Court grant a temporary restraining order and preliminary injunction in its favor.

**D.     The Freecycle Network is Entitled to a Temporary Restraining Order**

A temporary restraining order is designed to preserve the status quo and prevent irreparable injury until a Court can conduct a preliminary injunction hearing. *See* Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423, 439 (1974). Accordingly, The Freecycle Network has moved for a temporary restraining order covering the time between a hearing on that request and a hearing on its motion for a preliminary injunction.

Because a temporary restraining order burdens a defendant less than a preliminary injunction, the standard for issuing a temporary restraining order is equally or less stringent than that for the granting of a preliminary injunction. *See* Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). For the reasons explained above, The Freecycle Network meets the requirements for a preliminary injunction, and is therefore entitled to a temporary restraining order covering the time until the Court is able to schedule a hearing on the motion for a preliminary injunction.

- 13 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Case 4:06-cv-00173-RCC     Document 7     Filed 04/19/2006     Page 17 of 18

## IV. CONCLUSION

For the foregoing reasons, The Freecycle Network respectfully requests that this Court grant its *Ex Parte* Motion for Temporary Restraining Order and Motion for Preliminary Injunction.

Dated: April 19, 2006

DeCONCINI McDONALD YETWIN
& LACY, P.C. & PERKINS COIE LLP

By: _____ /s/ _____

Attorneys for Plaintiff
The Freecycle Network, Inc.

- 14 -

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF *EX PARTE* MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR PRELIMINARY INJUNCTION

[BY061010 158]

Case 4:06-cv-00173-RCC   Document 7   Filed 04/19/2006   Page 18 of 18