**United States District Court**
For the Northern District of California

1

2
<u>JUROR QUESTIONNAIRE</u>

3   Please fill out this form as completely as possible and print clearly.
Since we want to make copies for the attorneys and the Court, do not
4   write on the back of any page. If you need more room, continue at the
bottom of the page. Thank you for your cooperation.

5

6   1.    Your name: _____

7   2.    Your age: _____

8   3.    The city where you live: _____

9   4.    Your place of birth: _____

10   5.    Do you rent or own your own home? _____

11   6.    Your marital status: (circle one)

12        single    married    separated    divorced    widowed

13   7.    What is your occupation, and how long have you worked in
it? (If you are retired, please describe your main
14        occupation when you were working).

15   _____

16   _____

17   8.    Who is (or was) your employer?

18   _____

19   9.    How long have you worked for this employer? _____

20   10.   Please list the occupations of any adults with whom you
live.
21

22   _____

23   11.   If you have children, please list their ages and sex and,
if they are employed, please give their occupations.

24   _____

25   _____

26       _____

27   12.   Please describe your educational background:

28       Highest grade completed: _____

College and/or vocational schools you have attended:

_____

_____

_____

_____

Major areas of study: _____

13.  Have you ever served on a jury before? _____    How many

times?_____

If yes:  State/County Court _____    Federal Court _____

When? _____

Was it a civil or criminal case? _____

Did the jury(ies) reach a verdict? _____

(rev. 9/4/02)

**United States District Court**
For the Northern District of California

# Tab 7

Defendant's Request for Judicial Notice

Case No. CIV 06-00173-TUC-RCC
United States District Court
District of Arizona

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREECYCLESUNNYVALE, a California unincorporated association, | No. C 06-00324 CW |
| Plaintiff, | |
| v. | ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS |
| THE FREECYCLE NETWORK, INC., an Arizona corporation, | |
| Defendant. | |

Defendant The Freecycle Network, Inc. moves to dismiss Plaintiff's complaint on the grounds that the complaint fails to state a claim upon which relief may be granted.  Plaintiff FreecycleSunnyvale opposes the motion.  The matter was heard on March 31, 2006.  Having considered the papers filed by the parties and oral argument on the motion, the Court DENIES Defendant's motion in part and GRANTS it in part, with leave to amend.

BACKGROUND

The following facts are taken from Plaintiff's complaint. "Freecycling" is a practice by which a person with an unwanted

United States District Court

For the Northern District of California

1   item, a "freecycler," gives the item away rather than destroying it

2   or sending it to a landfill.  Organizations that promote

3   freecycling use email distribution lists to assist freecyclers to

4   announce the items they no longer want.  Many freecyclers announce

5   the availability of the items they wish to give away by, for

6   example, sending an email message to an email distribution list.

7   Many of the email distribution lists freecyclers use are hosted by

8   Yahoo! as part of its Yahoo! Groups online service.

9       Plaintiff, founded in October, 2003, provides support and

10   assistance to local freecyclers through its online group service

11   account hosted on Yahoo!.  Plaintiff entered into a contract with

12   Yahoo!, whereby it received Yahoo!'s online services to assist

13   freecyclers in the Sunnyvale, California area in freecycling items,

14   in exchange for its compliance with Yahoo!'s conditions.  Plaintiff

15   formed a Yahoo! group with the name "FreecycleSunnyvale."

16       Defendant, founded in May, 2003 with its principal place of

17   business in Arizona, provides nation-wide assistance to local

18   freecycling organizations that wish to create internet fora for

19   freecycling.

20       Defendant, and freecyclers generally, treated freecycling as

21   the common or generic name for giving something away to another for

22   free.  Initially, Defendant provided support for Plaintiff and

23   granted permission for Plaintiff to create a graphic logo reading

24   "FreecycleSunnyvale" as long as it was used for non-commercial

25   purposes under specific rules which govern all organizations

26   belonging to its network.

27       On August 27, 2004, Defendant submitted an application to

28                                   2

1    register the mark "freecycle" and its graphic logo on the Principal

2    Register in the United States Patent and Trademark Office (PTO).

3    That application is still pending.

4    On November 1, 2005, Defendant sent an email message to

5    Plaintiff, informing Plaintiff that the Freecycle name and logo

6    were trademark-protected.  The email demanded that Plaintiff cease

7    its use of the Freecycle name and logo.  On November 5, 2005,

8    Plaintiff responded, stating that the term freecycle is a generic

9    one, and reminding Defendant that it had granted Plaintiff a

10   license to use a graphic logo derived from Defendant's logo, so

11   long as it was not used for commercial purposes.  On November 14,

12   2005, Defendant responded, demanding that Plaintiff remove from its

13   Yahoo! online group service account all mention of the term

14   freecycle and the Freecycle logo within forty-eight hours, or it

15   would file with Yahoo! a trademark and copyright infringement

16   report.

17   On or about November 21, 2005, Defendant sent a communication

18   to Yahoo!, falsely asserting that Plaintiff's use of the freecycle

19   term and the logo constituted trademark infringement of its

20   registered term "freecycle" and of its logo.  On November 21, 2005,

21   Yahoo! then terminated its contract with Plaintiff, ceasing to

22   provide online services.

23   The termination of its Yahoo! Group rendered Plaintiff unable

24   to assist freecyclers in freecycling items.  Plaintiff therefore

25   suffered harm as a direct and proximate result of Defendant's false

26   assertions that Plaintiff's use of the word freecycle and/or the

27   graphic logo Defendant had licensed to Plaintiff for non-commercial

28

3

United States District Court
For the Northern District of California

1   use infringed Defendant's trademark rights in that term and/or that

2   logo.  On January 18, 2006, Plaintiff filed an opposition to the

3   Defendant's trademark application.

4        Plaintiff now seeks a declaratory judgment of non-infringement

5   of trademarks, and claims that Defendant has tortiously interfered

6   with its contractual relations with Yahoo!, its online service

7   provider.

8                  REQUEST FOR JUDICIAL NOTICE

9        Defendant requests that the Court take judicial notice of two

10   documents: (1) a copy of the Notice of Opposition filed by the

11   Plaintiff on January 18, 2006, in the United States PTO before the

12   Trademark Trial and Appeal Board, and (2) a copy of a SunnyvaleFree

13   Yahoo! online group service account as of February 22, 2006.

14   Plaintiff objects on the grounds that these facts were not alleged

15   in the complaint and therefore cannot be considered in this motion

16   to dismiss.

17        Under Rule 201 of the Federal Rules of Evidence, a court may

18   take judicial notice of facts that are not subject to reasonable

19   dispute because they are either generally known or capable of

20   accurate and ready determination.  The Ninth Circuit has held that

21   a court may take judicial notice of records and reports of

22   administrative bodies.  See Interstate Natural Gas Co. v. Southern

23   California Gas Co., 209 F.2d 380, 385 (9th Cir. 1953).  The Ninth

24   Circuit has also held that a court may properly look beyond the

25   complaint to matters of public record.  See Mack v. South Bay Beer

26   Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on

27   other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino,

28

United States District Court<br>For the Northern District of California

4

**United States District Court**
For the Northern District of California

1   501 U.S. 104 (1991).

2       The Court will take notice of the Notice of Opposition to

3   Defendant's registration application because it is a report by the

4   PTO, an administrative body, and a matter of public record.

5       The opening page of an online group service account called

6   SunnyvaleFree is presumably offered to show that Plaintiff still

7   operates its business through Yahoo!, under a different name.  The

8   Court will not take notice of this document.  It is not the report

9   of an administrative body.  Also, there is no proof from this

10  document that the page represented is attributable to Plaintiff.

11                              DISCUSSION

12  I.  Declaratory Relief

13      The Declaratory Judgment Act (DJA) permits a federal court to

14  "declare the rights and other legal relations" of parties to "a

15  case of actual controversy.  28 U.S.C. § 2201; see also Wickland

16  Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986).

17  The "actual controversy" requirement of the DJA is the same as the

18  "case or controversy" requirement of Article III of the United

19  States Constitution.  American States Ins. Co. v. Kearns, 15 F.3d

20  142, 143 (9th Cir. 1993).

21      Under the DJA, a two-part test is necessary to determine

22  whether a declaratory judgment is appropriate.  Principal Life

23  Insurance Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005).

24  First, the court must determine if there exists an actual case or

25  controversy within the court's jurisdiction.  Id.  Second, if so,

26  the court must decide whether to exercise its jurisdiction.  Id.

27      A.  Actual Case or Controversy

28                                  5

United States District Court

For the Northern District of California

1    Defendant claims Plaintiff has not alleged facts sufficient to

2 satisfy the "reasonable apprehension of litigation" requirement

3 under the DJA.  Further, Defendant claims that its cease and desist

4 request is insufficient to be considered a threat of a lawsuit

5 sufficient to trigger the DJA.

6    In Societe de Conditionnement en Aluminium v. Hunter

7 Engineering Co., Inc., 655 F.2d 938, 944 (9th Cir. 1981), the court

8 held that, rather than focus on an actual threat of litigation,

9 "[a] better way to conceptualize the case or controversy standard

10 is to focus on the declaratory judgment plaintiff.  An action for a

11 declaratory judgment that . . . the plaintiff is not·infringing, is

12 a case or controversy if the plaintiff has a real and reasonable

13 apprehension that he will be subject to liability if he continues

14 to manufacture his product."  See also Chesebrough-Pond's, Inc. v.

15 Faberge, Inc., 666 F.2d 393 (9th Cir. 1982)(advocating a "flexible

16 approach that is oriented to the reasonable perceptions of the

17 plaintiff"); Principal Life, 394 F.3d at 671 (holding the

18 appropriate standard is whether "there is a substantial

19 controversy, between parties having adverse legal interests, of

20 sufficient immediacy and reality to warrant the issuance of a

21 declaratory judgment.").  If the plaintiff is engaged in the

22 ongoing use of the allegedly infringed trademark, the showing of

23 apprehension "need not be substantial."  See Societe, 655 F.2d at

24 944.

25    The Ninth Circuit has held that less than a cease and desist

26 letter threatening a lawsuit can create a reasonable apprehension

27 of liability.  In Chesebrough-Pond's, 666 F.2d at 397, the

28                                          6

United States District Court
For the Northern District of California

1  defendant sent the plaintiff a letter requesting it withdraw an

2  application to register a trademark for a men's toiletry and

3  cosmetic line which the defendant asserted was similar to its own

4  product line.  Id. at 395.  The defendant stated that if the

5  plaintiff did not comply, it would file an opposition proceeding in

6  the PTO.  Id.  Although this letter did not threaten litigation,

7  the court nonetheless held that the plaintiff "had a real and

8  reasonable apprehension that such action would be taken," and

9  allowed the declaratory judgment claim to proceed.  Id. at 397.

10     In Societe de Conditionnement, 655 F.2d at 940, two

11  manufacturers who made similar aluminum products were competing for

12  a contract with a buyer.  One party threatened the buyer, stating

13  that if he purchased from the other company, he would sue the buyer

14  for patent infringement.  Id. at 941.  The Ninth Circuit held that

15  a threat of litigation made to a third party can be sufficient to

16  create reasonable apprehension that litigation is imminent, even

17  though the party was not specifically threatened with litigation.

18  Id. at 945.  Thus, mere threats of litigation against third parties

19  can be enough to meet the reasonable-apprehension requirement.

20     Here, Plaintiff received two threatening emails from

21  Defendant.  The first warned that Plaintiff should "please consider

22  this your official notice to stop using the trademark-protected

23  Freecycle name and logo, as well as any and all copyrighted texts,

24  graphics, rules, guidelines, title or its URL."  Complaint, Exhibit

25  7.  The second email was phrased more aggressively:

26          This is your second and final notification to
            cease and desist using the trademark-protected
27          Freecycle (TM) name and logo, any confusingly

28                              7

similar derivations thereof, and The Freecycle
Network's (TM) copyrighted texts/rules/
guidelines in your Yahoo group. Please do make
the necessary changes to your group name, group
URL, and applicable texts to avoid any
confusion with Freecycle services or delete the
group immediately. Realize that unauthorized
use of these protected materials is confusing
to the public and may be damaging the Freecycle
Network's reputation and goodwill. Moreover,
your unauthorized use is a violation of the
Yahoo Terms of Service, and a trademark and
copyright infringement report will be filed
with Yahoo if we cannot verify that these
materials have been removed with (sic) 48 hours
of the sending of this notice. . . . [A]ny
Freecycle mark, logo or name, as well as any
and all materials copyrighted by The Freecycle
Network must be removed before the end of the
48-hour period.

This second email invoked the language of trademark
infringement law and presented an ultimatum. Although a lawsuit
was not threatened, the language of the letter implies a harsh
response for failure to cease usage. Under the standard set forth
in Societe, based on reading these emails, Plaintiff could develop
a real and reasonable apprehension that it would be subject to
liability. As in Cheeseboro-Pond's, where a threat of filing an
opposition proceeding in the PTO was enough to create an
apprehension of liability, here, the threat of reporting Plaintiff
to Yahoo!, which effectively would shut down its primary network
for freecyclers, is enough to create a reasonable apprehension. In
fact, Defendant did report Plaintiff to Yahoo!, and Yahoo! did shut
it down. Therefore, Plaintiff had no opportunity to continue using
the term and logo.

Defendants cite Dunn Computer Corp. v. Loudcloud, Inc., 133 F.
Supp. 2d 823, 827 (E.D. Va. 2001) for the proposition that a cease-

8

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  and-desist letter without threat of litigation is insufficient

2  trigger the DJA.  In that case, the court held that a cease-and-

3  desist letter that does not "explicitly threaten litigation" does

4  not create a case or controversy.  Id.  However, that case is not

5  binding on this Court.  Moreover, here no threat of lawsuit was

6  necessary, because it is alleged that Defendant merely reported

7  Plaintiff to Yahoo!, which resulted in the shutting down of

8  Plaintiff's online service.  This was the same result as would have

9  followed had Defendant filed suit and obtained an injunction

10 against Plaintiff.

11      Defendant also cites Xerox Corp. v. Apple Computer Inc., 734

12 F. Supp 1542, 1546 (N.D. Cal. 1990), for the same proposition.

13 However, in that case, the plaintiff seeking a declaratory judgment

14 never received a cease-and-desist letter or any communication

15 requesting it to cease use of the copyrighted material in question.

16 Id. at 1544.  Thus, both cases cited by Defendant are unpersuasive.

17 The motion to dismiss the claim for relief under the DJA on the

18 ground that there is no case or controversy is denied.

19      B.  Exercise of Court's Discretion

20      Defendant argues that the Court should decline to exercise its

21 jurisdiction to hear this DJA claim because Plaintiff has already

22 filed an opposition before the PTO and has not exhausted its

23 administrative remedies.

24      Under the DJA, in addition to finding that there is an actual

25 case or controversy, the district court must decide whether to

26 exercise its discretion.  Principal Life, 394 F.3d at 669.  In

27 making this determination, the district court must consider the

28                                    9

1 factors set forth in <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491,

2 495 (1942). The Ninth Circuit states, "The <u>Brillhart</u> factors

3 remain the philosophic touchstone for the district court. The

4 district court should avoid needless determination of state law

5 issues; it should discourage litigants from filing declaratory

6 actions as a means of forum shopping; and it should avoid

7 duplicative litigation." <u>Government Employees Ins. Co. v. Dizol</u>,

8 133 F.3d 1220, 1225 (9th Cir. 1998); <u>see also</u> <u>Continental Cas. Co.</u>

9 <u>v. Robsac Industries</u>, 947 F.2d 1367, 1371-73 (9th Cir. 1991). The

10 district court must "balance concerns of judicial administration,

11 comity, and fairness to the litigants." <u>Chamberlain v. Allstate</u>

12 <u>Ins. Co.</u>, 931 F.2d 1361, 1367 (9th Cir. 1991)). Other relevant

13 considerations include:

> whether the declaratory action will settle all
> aspects of the controversy; whether the
> declaratory action will serve a useful purpose
> in clarifying the legal relations at issue;
> whether the declaratory action is being sought
> merely for the purposes of procedural fencing
> or to obtain a 'res judicata' advantage; or
> whether the use of a declaratory action will
> result in entanglement between the federal and
> state court systems. In addition, the district
> court might also consider the convenience of
> the parties, and the availability and relative
> convenience of other remedies.

21 <u>Kearns</u>, 15 F.3d at 145.

22 This cause of action raises no State law issues, only federal

23 trademark issues. Also, there is no evidence that Plaintiff has

24 filed this declaratory action for the purposes of forum shopping.

25 There is no duplicative litigation, only a proceeding in the PTO,

26 which may take years to resolve. A declaratory judgment would

27 clarify the rights of the parties concerning the use of the

28                                    10

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  "freecycle" term and logo.

2      Plaintiff has a legitimate interest in clarifying its right to

3  use the term "freecycle."  Plaintiff's business involves supporting

4  freecycling in the Bay Area, but currently it cannot operate its

5  original online group service account as "FreecycleSunnyvale"

6  because Defendant caused Yahoo! to revoke its contract with

7  Plaintiff for this internet service.  Plaintiff's interest in

8  clarifying the right to use "freecycle" is especially important

9  given that Defendant claims Plaintiff violated its terms of use

10 regarding the "freecycle" name and logo without providing

11 information as to how Plaintiff has done so.

12     Defendant incorrectly claims that Plaintiff must first exhaust

13 administrative remedies by waiting for the results of its

14 opposition to the trademark application before filing this

15 declaratory relief action in district court.  The PTO cannot decide

16 issues of trademark infringement; this is a matter that must be

17 decided in a court.  See e.g. Goya Foods, Inc. v. Tropicana

18 Products, Inc., 846 F.2d 848, 853-54 (2d Cir. 1988)(outcome of PTO

19 proceeding does not affect legal determination of infringement

20 claim; district court must still independently decide validity and

21 priority of marks and likelihood of consumer confusion.).

22     Because the PTO cannot resolve infringement claims, it was

23 reasonable for Plaintiff to believe, irrespective of the PTO's

24 decision, that it was likely to be subject to litigation.

25 Furthermore, there is no indication of how long the application to

26 register the trademark will take, or if it will ever be granted.

27 Thus, Plaintiff is not acting incorrectly by bringing this action

28                              11

United States District Court
For the Northern District of California

1  for declaratory judgment.  The Court exercises its jurisdiction to

2  hear this claim.  Defendant's motion to dismiss the declaratory

3  judgment claim is denied.

4  II.  Tortious Interference

5      Plaintiff's tortious interference claim is based on its

6  allegations that Defendant intentionally interfered with its then-

7  existing contract with Yahoo!, which caused Yahoo! to terminate

8  Plaintiff's online group service account.  Defendant argues that

9  the claim should be dismissed because Plaintiff fails to allege the

10  required elements of a tortious interference claim, including

11  Defendant's wrongful act and a factual basis for monetary damages.

12      To state a cause of action for intentional interference with

13  contractual relations in California, a plaintiff must plead the

14  following elements: "(1) a valid contract between plaintiff and a

15  third party; (2) defendant's knowledge of this contract;

16  (3) defendant's intentional acts designed to induce a breach and

17  disruption of the contractual relationship; (4) actual breach or

18  disruption of the contractual relationship; and (5) resulting

19  damage."  Pacific Gas & Electric Co. v. Bear Stearns & Co., 50

20  Cal.3d 1118, 1126 (1990).

21      A.  Wrongful Act

22      Defendant claims that Plaintiff fails to allege a wrongful

23  act.  The action of the defendant in inducing a breach of contract

24  must be wrongful, but "[i]ntentionally inducing or causing a breach

25  of an existing contract is . . . a wrong in and of itself."

26  Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal. 4th 26, 55

27  (1998).  Id.  Later, whether the Defendant "can establish that it

28                                    12

1 │ had a legitimate business purpose which justified its actions [in

2 │ interfering in the contract] is, . . . a matter for trial." <u>Id.</u> at

3 │ 56.

4 │     Under California law, Plaintiff must only allege that

5 │ Defendant intentionally interfered in its contract with Yahoo!.

6 │ Plaintiff alleged this in its complaint, and therefore has met its

7 │ burden.

8 │     B.　Factual Basis for Money Damages

9 │     Defendant claims that Plaintiff fails to allege a factual

10 │ basis for money damages, a necessary element in a claim of tortious

11 │ interference under California law.

12 │     In causes of action for tortious interference with business

13 │ relations in California, damages must be plead. <u>Quelimane</u>, 19 Cal.

14 │ 4th at 56. Defendant cites the Second Restatement of Torts for the

15 │ proposition that a party who wrongfully interferes with a contract

16 │ between two parties is liable for the resulting "pecuniary loss."

17 │ <u>Rest. 2d Torts</u>, § 766.

18 │     Plaintiff does not allege any monetary damages. Plaintiff

19 │ also cites the Second Restatement of Torts, for the proposition

20 │ that tortious interference can cause a broad array of damages,

21 │ including emotional distress and harm to the plaintiff's

22 │ reputation. At the hearing, Plaintiff indicated that it might seek

23 │ injunctive relief even if it alleged no damages. Defendant cites

24 │ no authority for the proposition that a plaintiff must prove, much

25 │ less plead, actual out-of-pocket monetary loss. However, Plaintiff

26 │ also has failed to allege emotional distress or reputational

27 │ damage, and the complaint does not seek injunctive relief. The

28 │

13

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  Court grants Defendant's motion to dismiss the tortious

2  interference claim, but grants leave to amend, for Plaintiff to add

3  allegations of damage and/or a request for injunctive relief.

4                           CONCLUSION

5      For the foregoing reasons, the Court DENIES in part

6  Defendant's motion to dismiss for failure to state a claim, and

7  GRANTS it in part, with leave to amend.  If Plaintiff files an

8  amended complaint, it must do so by April 7, 2006.

9      IT IS SO ORDERED.

10

11  Dated:   4/4/06                    _Claudia Wilken_

12                                    _____

13                                    CLAUDIA WILKEN
                                      United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              14

# Tab 8

Defendant's Request for Judicial Notice

Case No. CIV 06-00173-TUC-RCC
United States District Court
District of Arizona

*FREECYCLE SUN  4/6/06*

1   Ian N. Feinberg (SBN 88324)
    ifeinberg@mayerbrownrowe.com
2   Eric B. Evans (SBN 232476)
    eevans@mayerbrownrowe.com
3   Dennis S. Corgill (SBN 103429)
    dcorgill@mayerbrownrowe.com
4   MAYER, BROWN, ROWE & MAW LLP
    Two Palo Alto Square, Suite 300
5   3000 El Camino Real
    Palo Alto, CA  94306-2112
6   Telephone:    (650) 331-2000
    Facsimile:    (650) 331-2060
7
    Attorneys for Plaintiff
8   FREECYCLESUNNYVALE

9
                    UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
                          SAN JOSE DIVISION
12

13
    FREECYCLESUNNYVALE,                    CASE NO. C 06-00324 CW
14  a California unincorporated association,
                                            **AMENDED COMPLAINT FOR**
15              Plaintiff,                   **DECLARATORY JUDGMENT OF**
                                            **TRADEMARK NON-INFRINGEMENT**
16  v.                                      **AND TORTIOUS INTERFERENCE WITH**
                                            **BUSINESS RELATIONS**
17  THE FREECYCLE NETWORK,
    an Arizona corporation,
18
                Defendant.
19

20

21

22

23

24

25

26

27

28
    44019604.1
    ───────────────────────────────────────
                        AMENDED COMPLAINT AND JURY DEMAND
                                      CASE NO: C 06-00324 CW

1    Plaintiff FreecycleSunnyvale ("FreecycleSunnyvale"), through its *pro bono* attorneys

2 Mayer, Brown, Rowe & Maw LLP, alleges upon knowledge as to itself and its own actions, and

3 on information and belief as to all other matters, against Defendant The Freecycle Network as

4 follows:

5              **THE PARTIES**

6    1.  Plaintiff FreecycleSunnyvale is an unincorporated non-profit association with its

7 principal place of business in Sunnyvale, California, which is located in the Northern District of

8 California. FreecycleSunnyvale promotes freecycling by providing support and advice to

9 freecyclers.

10    2.  Defendant The Freecycle Network is an Arizona non-profit corporation with its

11 principal place of business in Tucson, Arizona. The Freecycle Network also promotes

12 freecycling by providing support and advice to freecyclers who wish to create Internet fora for

13 freecycling. The Freecycle Network has provided support, advice and other services to

14 freecycling associations in California within the jurisdiction of this Court.

15          **JURISDICTION AND VENUE**

16    3.  Jurisdiction is proper in this court because this litigation arises under federal law,

17 namely 15 U.S.C. § 1051 *et seq.* (Lanham Act). The Court has jurisdiction over this action under

18 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademarks), and 28 U.S.C. § 2201

19 (Declaratory Judgment Act).

20    4.  This Court has supplemental jurisdiction over FreecycleSunnyvale's state law

21 claims under 28 U.S.C. § 1367(a) because these claims are so related to FreecycleSunnyvale's

22 Lanham Act claims as to form part of a single case or controversy because they arise from the

23 same nucleus of operative facts and amount to a single judicial proceeding.

24    5.  This Court has personal jurisdiction over The Freecycle Network because The

25 Freecycle Network conducts business in California by, among other things: (a) providing support,

26 advice and other services to freecycling associations in California within the jurisdiction of this

27 Court and (b) operating online services hosted by Yahoo! Inc. ("Yahoo!"), an online service

28 provider with its headquarters in California within the jurisdiction of this Court.

44019604.1              1

1    6.    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c).

2    7.    An actual case or controversy has arisen between the parties. The Freecycle

3  Network has: (a) threatened litigation against FreecycleSunnyvale, (b) caused

4  FreecycleSunnyvale's online service provider, Yahoo!, to suspend FreecycleSunnyvale's Yahoo!

5  Group online service and (c) asserted that FreecycleSunnyvale's use of the generic term

6  "freecycle" constitutes trademark infringement. These statements have caused injury to

7  FreecycleSunnyvale and threaten further injury in the future.

8  **INTRA-DISTRICT ASSIGNMENT**

9    8.    Because it arises under the Lanham Act, this action is an Intellectual Property

10  Action. Under Local Rule 3-2(c), it is therefore subject to assignment on a district-wide basis.

11  **NATURE OF THE ACTION**

12    9.    FreecycleSunnyvale promotes freecycling, the practice by which a person with an

13  unwanted item, a freecycler, gives the item away rather than destroying the item or sending the

14  item to a landfill. FreecycleSunnyvale, until recently, administered an Internet forum, hosted by

15  Yahoo!, its online service provider, where freecyclers could freecycle items.

16    10.    The Freecycle Network claims trademark rights in the generic terms "freecycle"

17  and "freecycling" and in a logo it licensed to FreecycleSunnyvale. The Freecycle Network sent a

18  communication or communications to Yahoo! falsely asserting that FreecycleSunnyvale's use of

19  these terms and/or the logo constituted trademark infringement.

20    11.    The Freecycle Network's false statements caused Yahoo! to terminate its contract

21  with FreecycleSunnyvale and stop providing online services.

22    12.    FreecycleSunnyvale now seeks a declaration that use of the generic terms

23  "freecycle" and "freecycling" and/or the licensed logo is not trademark infringement, and

24  compensation for damages it has suffered.

25  **GENERAL ALLEGATIONS**

26  **Freecycling**

27    13.    Freecycling is the common or generic name for the practice by which a person

28  with an unwanted item gives the item to another, often a person who is poor or disadvantaged in

44019604.1                                                    2

AMENDED COMPLAINT AND JURY DEMAND
CASE NO: C 06-00324 CW

1  some way, for free. A person who freecycles is called a freecycler. Freecycling has two principal

2  advantages for society: (1) it reduces landfill by preventing or delaying the disposal of items

3  unwanted by their current owners; and (2) it gives those same items to others for free, who do

4  want them and may be unable to afford to purchase them.

5       14.    Many freecyclers announce the availability of the items they wish to give away

6  online by, for example, sending an email message to an email distribution list. Many of the email

7  distribution lists freecyclers use are hosted by Yahoo! as part of its Yahoo! Groups online service.

8       15.    Freecyclers who use the Yahoo! Groups online service to freecycle items enter

9  into a contract with Yahoo! In exchange for their compliance with Yahoo!'s conditions, the

10  freecyclers receive Yahoo!'s online services. These services allow freecyclers to reach many

11  other freecyclers in their area by sending a single email message.

12       16.    The Freecycle Network was founded in May 2003. The Freecycle Network helped

13  popularize freecycling by assisting local freecycling groups, including FreecycleSunnyvale, in

14  using Yahoo!'s online services to freecycle items.

15       17.    FreecycleSunnyvale was founded in October 2003. It entered into a contractual

16  relationship with Yahoo! and used Yahoo!'s online services to assist freecyclers in the Sunnyvale,

17  California area in freecycling items.

18       18.    FreecycleSunnyvale used a Yahoo! Group with the name "freecyclesunnyvale."

19       19.    FreecycleSunnyvale promotes freecycling through the internet and, in particular,

20  its Yahoo! Groups online services account. Internet users access particular web sites or group

21  accounts through internet links that represent portals or channels of communication. Once a

22  particular link becomes established and recognized in an online community, internet users rely

23  upon that link as a unique address to contact a particular web site or group account.

24       20.    On or shortly after October 2003, FreecycleSunnyvale entered into a contract with

25  Yahoo! to obtain an online group service account. The online community and, in particular,

26  Freecyclers in the Sunnyvale area thereafter adopted the internet link associated with this account

27  as a unique address at which they could reliably contact FreecycleSunnyvale for assistance in

28  freecycling activities.

44019604.1

3

1    21.    FreecycleSunnyvale initially received enthusiastic support from The Freecycle

2  Network.

3    22.    When a member of FreecycleSunnyvale requested assistance in creating a graphic

4  logo reading "FreecycleSunnyvale," the Board Chair and Executive Director of The Freecycle

5  Network, granted permission to do so, provided that the logo was not used for commercial

6  purposes.  The text of the email granting permission reads: "Yeah, Sunnyvale! … You can get the

7  neutral logo from http://www.freecycle.org , just don't use it for commercial purposes or maybe

8  Mark or Albert can help you to do your own fancy schmancy logo!"

9    23.    Freecyclers and The Freecycle Network treated freecycling as the common or

10  generic name for giving something away to another for free.  In August 2004, The Freecycle

11  Network's home page included, among others, the references to freecycling:

12    (a) "Number of cities freecycling: 1,210"

13    (b) "Number of people freecycling: 406,949"

14    (c) "Have fun and keep on Freecyclin'!"

15    (d) "How does Freecycling work?"

16    (e) "Who can Freecycle?"

17  The Freecycle Network submitted a copy of the home page of its website, containing these uses

18  of freecycle and freecycling in a generic sense, as a specimen to its pending application for

19  registration of the mark FREECYCLE on the Principal Register on or about August 27, 2004.  A

20  copy of the application and specimen submitted is attached as Exhibit 1.

21    24.    The Freecycle Network's use of the terms freecycle and freecycling in a generic

22  sense is consistent with prevailing practice in the national media.  Examination of publicly-

23  accessible media sources reveals hundreds of newspaper and magazine articles that use freecycle

24  and freecycling to refer to the practice of recycling by giving something away to another for free.

25  Examples include:

26    (a) "If a true packrat hordes [sic] a 'freecycler' can't stand to see something that might

27    be useful to someone go to waste, languishing unused in a musty garage, attic,

28    bottom dresser-drawer or—worse yet—a landfill." Katharine Mieszkowski, *From*

44019604.1

4

1    *each according to his junk, to each according to her need,* Salon.com, Nov. 23,

2    2003, *at* http://www.salon.com/tech/feature/2003/11/25/freecycle/print.html

3    (Attached as Exhibit 2);

4       (b)  "Freecyclers use Yahoo Groups as a free bulletin board, requiring registration

5          only.  Givers post their excess items on Yahoo and takers send an e-mail saying

6          they will come and pick it up."  Mike Cassidy, *Freecycling Movement Gains*

7          *Ground in Valley,* San Jose Mercury News, Jan. 27, 2004, at C1 (Attached as

8          Exhibit 3);

9       (c)  "Dusty but new exercise equipment, a five-person hot tub, and enough white Ikea

10         bookshelves to furnish a small college town have been posted online through a

11         new group that practices freecycling, the giving away of useful but unwanted

12         goods to keep them out of landfills and maybe help someone less fortunate in the

13         process."  Tina Kelley, *One Sock, With Holes? I'll Take It; Freecycling Brings*

14         *Castoff Goods Back From the Bin,* The New York Times, March 16, 2004, at B1

15         (Attached as Exhibit 4);

16      (d)  "Known as 'freecycling,' the approach creates Web-based communities in cities

17         across the country that allow members to post by e-mail a listing of items they are

18         looking to unload.  The catch?  Everything much be given away free."  *Gambits*

19         *and Gambles in the World of Technology,* The Wall Street Journal, May 6, 2004

20         (Attached as Exhibit 5); and

21      (e)  "And just how does one freecycle? . . . If there's an object, or even a service, you

22         want to give or receive, you post an e-mail, leave a contact and, if someone bites,

23         arrange for a pickup.  The rules are simple: no politics or spam, and everything

24         must be free."  Richard Jerome and Strawberry Saroyan, *Free For All*, People,

25         May 10, 2004, at 195 (Attached as Exhibit 6).

26   **The Freecycle Network Attempts to Seize the Generic Term Freecycle**

27       25.    Despite the generic nature of the terms freecycle and freecycling, The Freecycle

28   Network filed an application for the registration of the mark FREECYCLE and a graphic logo

44019604.1

5

AMENDED COMPLAINT AND JURY DEMAND
CASE NO: C 06-00324 CW

1  using that mark on the Principal Register of trademarks on or about August 27, 2004.  The

2  application is still pending.

3        26.     In late 2004 or early 2005, The Freecycle Network altered the text of its website to

4  remove some, but not all, uses of freecycle and freecycling in a generic sense.  The Freecycle

5  Network's website continues to include many hundreds of instances where freecycle and

6  freecycling are used in the generic sense to refer to the practice of recycling by giving something

7  away to another for free.

8        27.     In January or February 2005, The Freecycle Network began to assert the right to

9  exclusive use of the terms freecycle and freecycling.

10        28.     The Freecycle Network has created usage guidelines for users of its services.

11  These guidelines direct users to avoid using the terms freecycle and freecycling in a generic

12  sense.

13        29.     Freecyclers need to use to use the generic term, "freecycle," and its derivations,

14  because there is no acceptable substitute generic terminology for freecyclers to describe and

15  promote freecycling activities.  For example, The Freecycle Network has attempted to use the

16  following terms, none of which accurately describe freecycling:

17          (a) "Recycling" is not acceptable because it describes a different activity that involves

18              the collection of used materials that would otherwise be waste to be broken down

19              into new products.

20          (b) "Gifting" is not acceptable because it vaguely refers to an overly broad range of

21              activities that includes newly purchased items for a family member's birthday to

22              the donation of computer programs to the public domain.

23          (c) "Exchange" is not acceptable because it connotes a transaction in which both sides

24              provide goods or services of a roughly equivalent value.

25        30.     The Freecycle Network has not found an adequate substitute for the generic term

26  freecycling.  "[A] gifting or exchange-oriented [web]site" or "gifting or exchanging unwanted

27  items with fellow users" have not achieved wide acceptance.

28

44019604.1

6

1    31.    The Freecycle Network has replaced the simple question "How does Freecycling

2    work?" on its home page with "How does it work?"

3    **The Present Dispute**

4    32.    On or about November 1, 2005, The Freecycle Network sent an email message to

5    FreecycleSunnyvale.  The email message informed FreecycleSunnyvale that it must "stop using

6    the trademark-protected Freecycle name and logo, as well as any and all copyrighted texts,

7    graphics, rules, guidelines, title, or its URL (Yahoo group name)."  A copy of this email message

8    is attached as Exhibit 7.

9    33.    On or about November 5, 2005, FreecycleSunnyvale sent an email message to

10   Yahoo! describing the generic nature of the term freecycle and informing Yahoo! of the license

11   The Freecycle Network had granted FreecycleSunnyvale to use a graphic logo derived from The

12   Freecycle Network's graphic logo, so long as Freecycle Sunnyvale did not use the logo "for

13   commercial purposes."  A copy of this email message is attached as Exhibit 8.

14   34.    On or about November 14, 2005, The Freecycle Network sent a second email

15   message to FreecycleSunnyvale.  This message described itself as FreecycleSunnyvale's "second

16   and final notification to cease and desist using the trademark-protected Freecycle(TM) name and

17   logo."  The message stated that FreecycleSunnyvale's "use [of the term freecycle] is a violation

18   of the Yahoo Terms of Service, and a trademark and copyright infringement report will be filed

19   with Yahoo if we cannot verify that these materials have been removed with 48 hours of the

20   sending of this notice."  A copy of this email message is attached as Exhibit 9.

21   35.    On or before November 21, 2005, The Freecycle Network sent a communication

22   or communications to Yahoo! falsely claiming that FreecycleSunnyvale had infringed The

23   Freecycle Network's trademark rights in the term freecycle and/or in its graphic logo and

24   requesting that Yahoo! terminate the FreecycleSunnyvale Yahoo! Group.

25   36.    On or about November 21, 2005, Yahoo! terminated the FreecycleSunnyvale

26   Yahoo! Group.

27   37.    On or about November 21, 2005, Yahoo! sent an email message to

28   FreecycleSunnyvale.  The message asserted that FreecycleSunnyvale might have violated

44019604.1                                7

1  Yahoo!'s Terms of Service.  The message also stated that "If your use of your Yahoo! account is
2  brought to our attention again, and we believe that such use violates the [Terms of Service], then
3  we may terminate your account without further notice."  A copy of this email message is attached
4  as Exhibit 10.

5    38. The Freecycle Network's false claim that FreecycleSunnyvale had infringed The
6  Freecycle Network's trademark rights has damaged FreecycleSunnyvale's reputation and ongoing
7  business relation with Yahoo!  The Terms of Service for Yahoo! accounts provides that, in
8  response to a claim of intellectual property infringement, Yahoo! may bar a user from further
9  service.  The Freecycle Network's false claim places FreecycleSunnyvale at a continuing risk of
10  losing its ability to contract with Yahoo! for an online group service account.

11    39. The termination of its Yahoo! Group rendered FreecycleSunnyvale unable to assist
12  freecyclers in freecycling items.  FreecycleSunnyvale therefore suffered harm as a direct and
13  proximate result of The Freecycle Network's false assertions that FreecycleSunnyvale's use of
14  the word freecycle and/or the graphic logo The Freecycle Network had licensed to
15  FreecycleSunnyvale for non-commercial use infringed The Freecycle Network's trademark rights
16  in that term and/or that logo.

17  **<center>FIRST CLAIM FOR RELIEF</center>**
18  **<center>(Declaratory Judgment of Non-Infringement of Trademarks)</center>**
19  **<center>(15 U.S.C. § 1051 <i>et seq.</i>)</center>**

20    40. FreecycleSunnyvale realleges and incorporates by reference paragraphs 1 through
21  39 hereof as if set forth herein in full.

22    41. Freecycle has claimed that FreecycleSunnyvale's use of the words "freecycle" and
23  "freecycling" and/or the graphic logo The Freecycle Network had licensed to FreecycleSunnyvale
24  for non-commercial use constitutes trademark infringement and has threatened to bring a lawsuit
25  against FreecycleSunnyvale on this basis

26    42. An actual, present and justiciable controversy has arisen between
27  FreecycleSunnyvale and Freecycle concerning FreecycleSunnyvale's right to use the words
28

44019604.1

<center>8</center>

1  "freecycle" and "freecycling" and/or the graphic logo The Freecycle Network had licensed to

2  FreecycleSunnyvale for non-commercial use.

3      43.    FreecycleSunnyvale seeks a declaration from this Court that its use of the generic

4  terms "freecycle" and "freecycling" and/or the graphic logo The Freecycle Network had licensed

5  to FreecycleSunnyvale for non-commercial use does not constitute trademark infringement.

6      44.    In the alternative, FreecycleSunnyvale seeks a declaration from this Court that The

7  Freecycle Network has dedicated the terms "freecycle" and "freecycling" and/or the graphic logo

8  The Freecycle Network had licensed to FreecycleSunnyvale for non-commercial use to the public

9  domain and that FreecycleSunnyvale's use of those terms and/or that logo does not constitute

10  trademark infringement.

11      45.    In the second alternative, FreecycleSunnyvale seeks a declaration from this Court

12  that The Freecycle Network has engaged in uncontrolled or naked licensing of the terms

13  "freecycle" and "freecycling" and/or the graphic logo The Freecycle Network had licensed to

14  FreecycleSunnyvale for non-commercial use and thereby abandoned any trademark rights it

15  might otherwise of acquired, and that therefore FreecycleSunnyvale's use of those terms and/or

16  that logo does not constitute trademark infringement.

17                **SECOND CLAIM FOR RELIEF**

18              **(Tortious Interference with Business Relations)**

19      46.    FreecycleSunnyvale realleges and incorporates by reference paragraphs 1 through

20  39 hereof as if set forth herein in full.

21      47.    The Freecycle Network has tortiously interfered with FreecycleSunnyvale's

22  contractual relations with Yahoo!, its online service provider.

23      48.    FreecycleSunnyvale had a valid contract with Yahoo!

24      49.    The Freecycle Network knew of FreecycleSunnyvale's contract with Yahoo!

25      50.    The Freecycle Network sent a communication or communications to Yahoo!

26  falsely alleging that FreecycleSunnyvale's use of the generic terms "freecycle" and "freecycling"

27  and/or the graphic logo The Freecycle Network had licensed to FreecycleSunnyvale for non-

28

44019604.1                                          9

1   commercial use infringed The Freecycle Network's trademark rights in those terms and/or that

2   logo.

3       51.    By making this false allegation, The Freecycle Network intended to cause Yahoo!

4   to terminate its contractual relations with FreecycleSunnyvale.

5       52.    The Freecycle Network's conduct actually disrupted FreecycleSunnyvale's

6   contract with Yahoo! because it induced Yahoo! to terminate that contract and to suspend the

7   online services it provided to FreecycleSunnyvale.

8       53.    FreecycleSunnyvale has been injured as a proximate result of The Freecycle

9   Network's tortious interference with its contract with Yahoo!

10          (a) As a result of The Freecycle Network's intentional interference with

11              FreecycleSunnyvale's contract with Yahoo!, FreecycleSunnyvale's established

12              internet link was disrupted. FreecycleSunnyvale was injured, and continues to be

13              injured, because FreecycleSunnyvale is unable to promote and assist freecyclers in

14              the Sunnyvale area who use the FreecycleSunnyvale name, which is the most

15              established, reliable, and continuously-available means to locate the internet

16              address at which freecyclers may contact FreecycleSunnyvale.

17          (b) As a result of The Freecycle Network's intentional interference with

18              FreecycleSunnyvale's contract with Yahoo!, FreecycleSunnyvale is unable to use

19              or allow the use of the generic term, "freecycle," or any of its derivations, on its

20              group account. FreecycleSunnyvale was injured, and continues to be injured,

21              because FreecycleSunnyvale is unable to use the generic terms that accurately

22              describe and promote freecycling among freecyclers in the Sunnyvale area, all to

23              the detriment of FreecycleSunnyvale's efforts to promote freecycling.

24          (c) As a result of The Freecycle Network's intentional interference with

25              FreecycleSunnyvale's contract with Yahoo!, FreecycleSunnyvale has been

26              identified as a trademark infringer to Yahoo! FreecycleSunnyvale was injured,

27              and continues to be injured, because FreecycleSunnyvale's reputation with Yahoo!

28              has been irreparably damaged.

44019604.1

10

1    54.    Unless The Freecycle Network is restrained by preliminary and permanent

2    injunctions, FreecycleSunnyvale will continue to suffer severe and irreparable harm in that The

3    Freecycle Network will continue to disseminate false claims of trademark infringement and

4    FreecycleSunnyvale will continue to be damaged by its inability to use the generic term,

5    "freecycle," or any of its derivations.  FreecycleSunnyvale has no adequate remedy at law

6    because monetary damages, which may compensate for past injury, will not afford adequate relief

7    from the fear and threat of continuing false claims of trademark infringement by The Freecycle

8    Network.

9    55.    Although injured by the tortious conduct of The Freecycle Network,

10   FreecycleSunnyvale specifically waives any right it may have to recover monetary damages that

11   it has incurred to date on the ground that the freecycling public would be better served if the

12   non-profit corporation, The Freecycle Network, uses its resources to promote freecycling rather

13   than to pay damages to the unincorporated association, FreecycleSunnyvale, which also operates

14   on a non-profit basis.

15                              **PRAYER FOR RELIEF**

16   WHEREFORE, FreecycleSunnyvale respectfully prays for:

17   1.  Judgment granting FreecycleSunnyvale the declaratory relief it seeks;

18   2.  A preliminary and permanent injunction against The Freecycle Network, and all of its

19       officers, employees, and agents, enjoining them from interfering with

20       FreecycleSunnyvale's business relations by disseminating false claims of trademark

21       infringement;

22   3.  A declaration that this case is exceptional under 15 U.S.C. § 1115(a)(3);

23   4.  An order awarding FreecycleSunnyvale its attorneys' fees in this action;

24   5.  An order awarding FreecycleSunnyvale its costs in this action; and

25   ////

26   ////

27   ////

28   ////

44019604.1

                              11

1       6.   Such other and further relief to which FreecycleSunnyvale may be entitled as a matter of

2          law or equity or which this Court deems just and proper.

3

4  Dated: April 6, 2006                     MAYER, BROWN, ROWE & MAW LLP

5

6                      By:     */s/ Ian N. Feinberg*

                                 Ian N. Feinberg

7                                  Eric Evans

                                 Dennis Corgill

8                                  Attorneys for Plaintiff

                                 FREECYCLESUNNYVALE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

44019604.1                            12

                                           AMENDED COMPLAINT AND JURY DEMAND

                                               CASE NO: C 06-00324 CW

# Tab 9

Defendant's Request for Judicial Notice

Case No. CIV 06-00173-TUC-RCC
United States District Court
District of Arizona

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## Northern District of California

FreecycleSunnyvale,                           06-00324 CW MED

               Plaintiff(s),      **Notice of Appointment of Mediator**

    v.

Freecycle Network,

               Defendant(s).

TO COUNSEL OF RECORD:

      The court notifies the parties and counsel that the Mediator assigned to this case

is:

          **William N. Hebert**
          Kirkpatrick & Lockhart Nicholson Graham
          630 Hanson Way
          Palo Alto, CA 94304
          650-798-6700
          whebert@klng.com

      Counsel shall familiarize themselves with the requirements of ADR L.R. 6 which

governs the Mediation program.  The mediator will schedule a joint phone conference

with counsel under ADR L.R. 6-6 and will set the date of the mediation session within

the deadlines set by ADR L.R. 6-4 or the court order referring this action to mediation.

The court permits the mediator to charge each party its pro rata share of the cost of the

phone conference.

**Notice of Appointment of Mediator**
06-00324 CW MED                           - 1 -

United States District Court
Northern District of California

1    Counsel are reminded that the written mediation statements required by the ADR

2  L.R. 6-7 shall NOT be filed with the court.

3

4  Dated: April 13, 2006

5                                    RICHARD W. WIEKING
                                     Clerk
6                                    by:    Alice M. Fiel

7                                            /s/

8                                    _____
                                     ADR Case Administrator
9                                    415-522-3148
                                     Alice_Fiel@cand.uscourts.gov

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**Notice of Appointment of Mediator**
06-00324 CW MED              - 2 -

# Tab 10

Defendant's Request for Judicial Notice

Case No. CIV 06-00173-TUC-RCC
United States District Court
District of Arizona

1   PAUL J. ANDRE, BAR NO. 196585
    (pandre@perksincoie.com)
2   LISA KOBIALKA, Bar No. 191404
    (lkobialka@perkinscoie.com)
3   ESHA BANDYOPADHYAY, State Bar No. 212249
    (ebandyopadhyay@perkinscoie.com)
4   SEAN M. BOYLE, Bar No. 238123
    (sboyle@perkinscoie.com)
5   PERKINS COIE LLP
    101 Jefferson Drive
6   Menlo Park, CA 94025
    Telephone:    (650) 838-4300
7   Facsimile:    (650) 838-4350

8   Attorneys for Defendant and Counterclaimant
    The Freecycle Network, Inc.
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  OAKLAND DIVISION

13

14  FREECYCLESUNNYVALE, a California          CASE NO. C 06-00324 CW
    unincorporated association,
15                                            **THE FREECYCLE NETWORK, INC.'S**
                   Plaintiff,                 **ANSWER TO PLAINTIFF'S**
16                                            **AMENDED COMPLAINT AND**
                                              **COUNTERCLAIMS**
17         v.
                                              **JURY TRIAL DEMANDED**
18  THE FREECYCLE NETWORK, INC., an
    Arizona corporation,
19
                   Defendant.
20  _____
21  THE FREECYCLE NETWORK, INC., an
    Arizona corporation,
22
                   Counterclaimant,
23
           v.
24  FREECYCLESUNNYVALE, a California
    unincorporated association,
25
                   Counterdefendant.
26  _____
27

28

1    Defendant The Freecycle Network, Inc. ("The Freecycle Network") hereby answers

2  plaintiff FreecycleSunnyvale's ("Plaintiff") Amended Complaint for Declaratory Judgment of

3  Trademark Non-Infringement and Tortious Interference with Business Relations ("Amended

4  Complaint"), on personal knowledge as to its own activities and on information and belief as to

5  the activities of others, as follows:

6                      **THE PARTIES**

7        1.       The Freecycle Network lacks knowledge or information sufficient to admit or deny

8  the allegations of Paragraph 1 and on that basis denies those allegations.

9        2.       Answering the allegations of Paragraph 2, The Freecycle Network admits that it is

10  an Arizona non-profit organization with its principal place of business in Tucson, Arizona.  Except

11  as thus expressly admitted, The Freecycle Network denies the allegations of Paragraph 2.

12              **JURISDICTION AND VENUE**

13        3.       Answering the allegations of Paragraph 3, The Freecycle Network admits that this

14  Court has subject matter jurisdiction over this action, as Plaintiff purports to bring this action

15  under the federal trademark laws of the United States and the Declaratory Judgment Act.  Except

16  as thus expressly admitted, The Freecycle Network denies the allegations of Paragraph 3.

17        4.       Answering the allegations of Paragraph 4, The Freecycle Network admits that this

18  Court currently has supplemental jurisdiction over certain claims in this action.  Except as thus

19  expressly admitted, The Freecycle Network denies the allegations of Paragraph 4.

20        5.       Answering the allegations of Paragraph 5, The Freecycle Network admits that this

21  Court currently has personal jurisdiction over The Freecycle Network in this matter.  Except as

22  thus expressly admitted, The Freecycle Network denies the allegations of Paragraph 5.

23        6.       Answering the allegations of Paragraph 6, The Freecycle Network admits that

24  venue is proper in this judicial district.  Except as thus expressly admitted, The Freecycle Network

25  denies the allegations of Paragraph 6.

26        7.       Answering the allegations of Paragraph 7, The Freecycle Network admits that there

27  is a case and controversy that has arisen between the parties.  Except as thus expressly admitted,

28  The Freecycle Network denies the remaining allegations of Paragraph 7.

- 2 -

1

## INTRA-DISTRICT ASSIGNMENT

2

8.      Answering the allegations of Paragraph 8, The Freecycle Network admits that

3

district-wide assignment is proper in this matter.  Except as thus expressly admitted, The

4

Freecycle Network denies the allegations of Paragraph 8.

5

## NATURE OF THE ACTION

6

9.      The Freecycle Network lacks knowledge or information sufficient to admit or deny

7

the allegations of Paragraph 9 and on that basis denies those allegations.

8

10.     Answering the allegations of Paragraph 10, The Freecycle Network admits that it

9

claims trademark rights in the trademark FREECYCLE and "The Freecycle Network" logo,

10

among other trademarks.  Except as thus expressly admitted, The Freecycle Network denies the

11

allegations of Paragraph 10.

12

11.     The Freecycle Network denies the allegations of Paragraph 11.

13

12.     Answering the allegations of Paragraph 12, The Freecycle Network admits that

14

Plaintiff appears to seek a declaration that it has not infringed upon The Freecycle Network's

15

trademarks, and compensation.  Except as thus expressly admitted, The Freecycle Network denies

16

the allegations of Paragraph 12.

17

## GENERAL ALLEGATIONS

18

13.     The Freecycle Network denies the allegations of Paragraph 13.

19

14.     The Freecycle Network lacks knowledge or information sufficient to admit or deny

20

the allegations of Paragraph 14, and on that basis denies those allegations.

21

15.     The Freecycle Network lacks knowledge or information sufficient to admit or deny

22

the allegations of Paragraph 15, and on that basis denies those allegations.

23

16.     Answering the allegations of Paragraph 16, The Freecycle Network admits that it

24

was founded in May, 2003.  Except as thus expressly admitted, The Freecycle Network denies the

25

allegations of Paragraph 16.

26

17.     The Freecycle Network lacks knowledge or information sufficient to admit or deny

27

the allegations of Paragraph 17, and on that basis denies those allegations.

28

1    18.    The Freecycle Network lacks knowledge or information sufficient to admit or deny
2    the allegations of Paragraph 18, and on that basis denies those allegations.

3    19.    The Freecycle Network lacks knowledge or information sufficient to admit or deny
4    the allegations of Paragraph 19, and on that basis denies those allegations.

5    20.    The Freecycle Network lacks knowledge or information sufficient to admit or deny
6    the allegations of Paragraph 20, and on that basis denies those allegations.

7    21.    The Freecycle Network admits the allegations of Paragraph 21.

8    22.    Answering the allegations of Paragraph 22, The Freecycle Network admits that it
9    has sent an e-mail communication stating "Yeah, Sunnyvale! … You can get the neutral logo from
10    http://www.freecycle.org, just don't use it for commercial purposes or maybe Mark or Albert can
11    help you to do your own fancy schmancy logo!"  Except as thus expressly admitted, The Freecycle
12    Network lacks knowledge or information sufficient to admit or deny the allegations of Paragraph
13    22, and on that basis denies those allegations.

14    23.    Answering the allegations of Paragraph 23, The Freecycle Network denies the first
15    sentence of Paragraph 23.  The Freecycle Network admits that Plaintiff has attached what appears
16    to be The Freecycle Network's application for registration of the mark FREECYCLE on the
17    Principal Register to its Amended Complaint as Exhibit 1.  The Freecycle Network lacks
18    knowledge or information sufficient to admit or deny the remaining allegations of Paragraph 23,
19    and on that basis denies those allegations.

20    24.    Answering the allegations of Paragraph 24, The Freecycle Network admits that
21    Plaintiff has attached what appears to be an article from Salon.com, dated November 23, 2003, to
22    its Amended Complaint as Exhibit 2.  The Freecycle Network further admits that Plaintiff has
23    attached what appears to be an article from the San Jose Mercury News, dated January 27, 2004,
24    to its Amended Complaint as Exhibit 3.  The Freecycle Network further admits that Plaintiff has
25    attached what appears to be an article from the New York Times, dated March 16, 2004, to its
26    Amended Complaint as Exhibit 4.  The Freecycle Network further admits that Plaintiff has
27    attached what appears to be an article from The Wall Street Journal, dated May 6, 2004, to its
28    Amended Complaint as Exhibit 5.  The Freecycle Network further admits that Plaintiff has

- 4 -

1    attached what appears to be an article from People, dated May 10, 2004, to its Amended

2    Complaint as Exhibit 6. The Freecycle Network further admits that the language of the articles

3    attached to Plaintiff's Amended Complaint as Exhibits 2-6 speak for themselves. Except as thus

4    expressly admitted, The Freecycle Network denies the allegations of Paragraph 24.

5    **The Freecycle Network Attempts to Seize the Generic Term Freecycle**

6        25.    Answering the allegations of Paragraph 25, The Freecycle Network admits that it

7    has filed an application for registration on the Principal Register of the FREECYCLE mark and a

8    graphic logo. The Freecycle Network further admits that the application is still pending. Except

9    as thus expressly admitted, The Freecycle Network denies the allegations of Paragraph 25.

10        26.    The Freecycle Network denies the allegations of Paragraph 26.

11        27.    The Freecycle Network denies the allegations of Paragraph 27.

12        28.    The Freecycle Network admits the allegations of Paragraph 28.

13        29.    The Freecycle Network denies the allegations of Paragraph 29.

14        30.    The Freecycle Network denies the allegations of Paragraph 30.

15        31.    The Freecycle Network denies the allegations of Paragraph 31.

16    **The Present Dispute**

17        32.    Answering the allegations of Paragraph 32, The Freecycle Network admits that it

18    sent an e-mail to Plaintiff on November 1, 2005. The Freecycle Network further admits that

19    Plaintiff has attached what appears to be a copy of this e-mail to its Amended Complaint as

20    Exhibit 7, and that the language of this e-mail speaks for itself. Except as thus expressly admitted,

21    The Freecycle Network denies the allegations of Paragraph 32.

22        33.    The Freecycle Network lacks knowledge or information sufficient to admit or deny

23    the allegations of Paragraph 33, and on that basis denies those allegations.

24        34.    Answering the allegations of Paragraph 34, The Freecycle Network admits that it

25    sent an e-mail to Plaintiff on November 14, 2005. The Freecycle Network further admits that

26    Plaintiff has attached what appears to be a copy of this e-mail to its Amended Complaint as

27    Exhibit 8, and that the language of this e-mail speaks for itself. Except as thus expressly admitted,

28    The Freecycle Network denies the allegations of Paragraph 34.

1    35.    The Freecycle Network denies the allegations of Paragraph 35.

2    36.    The Freecycle Network lacks knowledge or information sufficient to admit or deny

3    the allegations of Paragraph 36, and on that basis denies those allegations.

4    37.    Answering the allegations of Paragraph 37, The Freecycle Network admits that

5    Plaintiff has attached what appears to be a copy of an e-mail from Yahoo! to Plaintiff to its

6    Amended Complaint as Exhibit 10, and that the language of this e-mail speaks for itself.  Except

7    as thus expressly admitted, The Freecycle Network denies the allegations of Paragraph 37.

8    38.    Answering the allegations of Paragraph 38, The Freecycle Network lacks

9    knowledge or information sufficient to admit or deny the allegations of the second sentence of

10   Paragraph 38, and on that basis denies those allegations.  The Freecycle Network denies the

11   remaining allegations of Paragraph 38.

12   39.    The Freecycle Network denies the allegations of Paragraph 39.

13   ### FIRST CLAIM FOR RELIEF

14   **(Declaratory Judgment of Non-Infringement of Trademarks)**

15   **(15 U.S.C. § 1051 *et seq.*)**

16   40.    The Freecycle Network incorporates its responses to Paragraphs 1 through 39

17   above as if fully set forth in response to Paragraph 40 of the Amended Complaint.

18   41.    The Freecycle Network denies the allegations of Paragraph 41.

19   42.    The Freecycle Network admits that an actual, present and justiciable controversy

20   has arisen between The Freecycle Network and Plaintiff regarding The Freecycle Network's

21   trademarks and denies the remaining allegations of Paragraph 42.

22   43.    Answering the allegations of Paragraph 43, The Freecycle Network admits that

23   Plaintiff appears to seek a declaration from this Court that its use of The Freecycle Network's

24   trademarks does not constitute trademark infringement.  Except as thus expressly admitted, The

25   Freecycle Network denies the allegations of Paragraph 43.

26   44.    Answering the allegations of Paragraph 43, The Freecycle Network admits that

27   Plaintiff appears to seek a declaration from this Court that its The Freecycle Network has

28   dedicated its trademarks to the public domain.  The Freecycle Network further admits that Plaintiff

- 6 -

1    appears to seek a declaration from this Court that its use of The Freecycle Network's trademarks

2    does not constitute trademark infringement.  Except as thus expressly admitted, The Freecycle

3    Network denies the allegations of Paragraph 44.

4         45.    Answering the allegations of Paragraph 45, The Freecycle Network admits that

5    Plaintiff appears to seek a declaration from this Court that The Freecycle Network has engaged in

6    uncontrolled or naked licensing of its trademarks.  The Freecycle Network further admits that

7    Plaintiff appears to seek a declaration from this Court that its use of The Freecycle Network's

8    trademarks does not constitute trademark infringement.  Except as thus expressly admitted, The

9    Freecycle Network denies the allegations of Paragraph 45.

10    <div align="center">**SECOND CLAIM FOR RELIEF**</div>

11    <div align="center">**(Tortious Interference with Business Relations)**</div>

12         46.    The Freecycle Network incorporates its responses to Paragraphs 1 through 39

13    above as if fully set forth in response to Paragraph 46 of the Amended Complaint.

14         47.    The Freecycle Network denies the allegations of Paragraph 47.

15         48.    The Freecycle Network denies the allegations of Paragraph 48.

16         49.    The Freecycle Network denies the allegations of Paragraph 49.

17         50.    The Freecycle Network denies the allegations of Paragraph 50.

18         51.    The Freecycle Network denies the allegations of Paragraph 51.

19         52.    The Freecycle Network denies the allegations of Paragraph 52.

20         53.    The Freecycle Network denies the allegations of Paragraph 53.

21         54.    The Freecycle Network denies the allegations of Paragraph 54.

22         55.    Answering the allegations of Paragraph 55, The Freecycle Network admits that

23    Plaintiff waives any and all rights to recover monetary damages.  The Freecycle Network further

24    admits that the public is better served if The Freecycle Network is not required to pay damages to

25    Plaintiff.  Except as thus expressly admitted, The Freecycle Network denies the allegations of

26    Paragraph 55.

27

28

<div align="center">- 7 -</div>
THE FREECYCLE NETWORK'S ANSWER TO AMENDED

1

**AFFIRMATIVE DEFENSES**

2

FIRST AFFIRMATIVE DEFENSE

3    56.    Plaintiff's Amended Complaint fails to state a claim upon which relief may be

4    granted.

5

SECOND AFFIRMATIVE DEFENSE

6    57.    Plaintiff lacks standing to assert the claims set forth in this Action.

7

THIRD AFFIRMATIVE DEFENSE

8    58.    Plaintiff's claims are barred by virtue or laches and/or estoppel.

9

FOURTH AFFIRMATIVE DEFENSE

10    59.    Plaintiff's claims are barred under the doctrine of unclean hands.

11

FIFTH AFFIRMATIVE DEFENSE

12    60.    Plaintiff's claims are barred under the doctrine of privilege.

13

**COUNTERCLAIMS**

14    Defendant and Counterclaimant The Freecycle Network, Inc. ("The Freecycle Network")

15    hereby alleges for its counterclaims against Plaintiff and Counterdefendant FreecycleSunnyvale

16    ("Counterdefendant"), on personal knowledge as to its own activities and on information and

17    belief as to the activities of others, as follows:

18

**The Parties**

19    61.    The Freecycle Network is an incorporated Arizona non-profit organization with its

20    principal place of business in Tucson, Arizona.  The Freecycle Network promotes recycling by

21    providing support to and acting as a central organizing point for local community-based recycling

22    efforts throughout the United States and several countries abroad.

23    62.    The Freecycle Network is informed and believes that Counterdefendant is an

24    unincorporated non-profit association with its principal place of business in Sunnyvale, California.

25

**Jurisdiction and Venue**

26    63.    This Court has jurisdiction over the subject matter of this action pursuant to 28

27    U.S.C. §§ 1331 and 1338, as this action arises under the trademark laws of the United States.

28

- 8 -

1      64.    This Court has original jurisdiction over The Freecycle Network's state law claims

2  under 28 U.S.C. § 1332(a), as well as supplemental jurisdiction over these claims under 28 U.S.C.

3  § 1367(a).

4      65.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), as this is a district in

5  which a substantial part of the events giving rise to the claims occurred.

6  **COUNTERCLAIM FOR TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT**

7                  (Trademark Infringement, 15 U.S.C §§ 1114 and 1125(a))

8      66.    The Freecycle Network re-alleges and incorporates by reference each allegation

9  contained in Paragraphs 1-65, inclusive, as fully set forth herein.

10      67.    The Freecycle Network is the sole owner of the distinctive and famous trademarks

11  "FREECYCLE" and "The Freecycle Network", and the distinctive "The Freecycle Network" logo

12  (collectively referred to as the "Marks"), which it has been using exclusively and continuously

13  since at least May 1, 2003.

14      68.    In addition to The Freecycle Network's long and continuous use of the Marks, the

15  United States Patent and Trademark Office ("PTO") approved registration of the mark

16  FREECYCLE and its distinctive logo on the Principal Register on November 22, 2005.  The PTO

17  issued a notice of publication for the mark FREECYCLE and its distinctive logo on December 28,

18  2005.

19      69.    As a result if its use and promotion of the Marks, The Freecycle Network has built

20  up and now owns valuable goodwill that is symbolized by these Marks.

21      70.    Counterdefendant has used The Freecycle Network's Marks without permission,

22  even after being asked to cease and desist using the Marks.

23      71.    Counterdefendant continues to use The Freecycle Network's Marks through a new

24  Yahoo! group with the name "SunnyvaleFree" without permission, even after being asked to cease

25  and desist using the Marks.

26      72.    Counterdefendant has encouraged others to use The Freecycle Network's Marks

27  without permission, even after being asked to cease and desist using the Marks.

28

73.    Counterdefendant continues to encourage others to use The Freecycle Network's Marks through a new Yahoo! group with the name "SunnyvaleFree" without permission, even after being asked to cease and desist using the Marks.

74.    Such use by Counterdefendant of The Freecycle Network's Marks are likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval of such products and services as to the affiliation, connection, or association with Counterdefendant and The Freecycle Network.  This constitutes direct trademark infringement in violation of Section 32 of the Lanham Act, 15. U.S.C. § 1114(1).

75.    Such inducement by Counterdefendant of third parties to use The Freecycle Network's Marks constitutes contributory trademark infringement in violation of Section 43(a) of the Lanham Act, § 1125(a).

76.    The Freecycle Network is informed and believes that Counterdefendant's past and continuing contributory trademark infringement of The Freecycle Network's Marks has been deliberate and willful, and was calculated to harm the goodwill of The Freecycle Network's Marks and of The Freecycle Network's reputation and goodwill.

77.    Counterdefendant's infringing conduct has damaged The Freecycle Network in an amount to be determined at trial, and will continue to damage The Freecycle Network, unless restrained by this Court.  The Freecycle Network is entitled to an injunction, as set forth below, and as a consequence of Counterdefendant's willful conduct, to an award against Counterdefendant in an amount of three times The Freecycle Network's damages, and The Freecycle Network's attorneys' fees and costs incurred in connection with this action.

## COUNTERCLAIM FOR UNFAIR COMPETITION UNDER THE LANHAM ACT

### (Unfair Competition, 15 U.S.C § 1125(a))

78.    The Freecycle Network re-alleges and incorporates by reference each allegation contained in Paragraphs 1-77, inclusive, as fully set forth herein.

79.    Counterdefendant's use of The Freecycle Network's Marks in connection with their own re-using, recycling, and gifting services misrepresents the nature, characteristics, and qualities of Counterdefendant's services and products.

- 10 -
THE FREECYCLE NETWORK'S ANSWER TO AMENDED

1    80.    By using The Freecycle Network's Marks in connection with competing services in

2    commerce, Counterdefendant has engaged and continues to engage in unfair competition in

3    violation of 15 U.S.C. § 1125(a).

4    81.    Counterdefendant's unfair competition conduct has damaged The Freecycle

5    Network in an amount to be determined at trial, and will continue to damage The Freecycle

6    Network, unless restrained by this Court.  The Freecycle Network is entitled to an injunction, as

7    set forth below, and as a consequence of Counterdefendant's willful conduct, to an award against

8    Counterdefendant in an amount of three times The Freecycle Network's damages, and The

9    Freecycle Network's attorneys' fees and costs incurred in connection with this action.

10   **COUNTERCLAIM FOR UNFAIR COMPETITION UNDER THE CALIFORNIA**
11   **BUSINESS AND PROFESSIONAL CODE**

12   (Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 and 17500)

13   82.    The Freecycle Network re-alleges and incorporates by reference each allegation

14   contained in Paragraphs 1-81, inclusive, as fully set forth herein.

15   83.    By the acts described above, Counterdefendant has engaged in unlawful and unfair

16   business practices, and has conducted unfair, deceptive, and misleading acts in violation of Cal.

17   Bus. & Prof. Code §§ 17200 and 17500 which have injured and threaten to injure The Freecycle

18   Network's business, goodwill, and property, unless restrained.

19   84.    Accordingly, The Freecycle Network is entitled to injunctive relief and other relief

20   as set forth below.

21   **PRAYER FOR RELIEF**

22   WHEREFORE, The Freecycle Network requests that the Court enter judgment in its favor

23   and against Counterdefendant on its Amended Complaint as follows:

24   a.    Dismissing Counterdefendant's claims and declaring that it take nothing by way of

25   its Amended Complaint;

26   b.    Granting an injunction temporarily and permanently enjoining and restraining

27   Counterdefendant, its officers, agents, servants, employees, affiliates, parent or subsidiary

28

- 11 -

1    corporations, attorneys, and all those in privity or acting in concert with Counterdefendant, from

2    using the Marks in any form or any close variation thereof, and in particular form;

3            c.      Awarding damages to The Freecycle Network adequate to compensate The

4    Freecycle Network for Counterdefendant's unlawful activities, together with interest thereon, and

5    an increase in the amount of damages to three times the amount found or assessed by this Court

6    because of the willful and deliberate nature of Counterdefendant's acts, as provided by 35 U.S.C.

7    § 284;

8            d.      Order an accounting by Counterdefendant of all gains, profits, and advantages

9    derived from its unlawful activities, such amount to be trebled pursuant to 15 U.S.C. § 1117(a) by

10   virtue of Counterdefendant's willful conduct;

11           e.      Awarding compensatory damages in an amount to be proven at trial, such amount

12   to be trebled pursuant to 15 U.S.C. § 1117(a) by virtue of Counterdefendant's willful conduct;

13           f.      Awarding The Freecycle Network its costs incurred in this action, disbursements

14   and attorneys fees to the extent permitted by law; and

15           g.      Granting such other and further relief as this Court may deem just and proper.

16                                  **JURY DEMAND**

17        The Freecycle Network hereby demands a trial by jury on all issues so triable as a matter

18   of right and law.

19

20   DATED: April 14, 2006            **PERKINS COIE LLP**

21

22                                    By  /s/  Esha Bandyopadhyay
                                      Paul J. Andre
                                      Lisa Kobialka
23                                    Esha Bandyopadhyay
                                      Sean Boyle
24                                    Attorneys for Defendant and Counterclaimant
                                      The Freecycle Network, Inc.
25

26

27

28   BY061030169

                                    - 12 -