**DeCONCINI McDONALD**
 **YETWN & LACY, P.C.**
2525 East Broadway, Suite 200
Tucson, Arizona  85716-5300
Telephone:  520-322-5000
Facsimile:  520-322-5585
LISA ANNE SMITH, AZ Bar No. 016762
(lsmith@dmyl.com)
SHEFALI MILCZAREK-DESAI, AZ Bar No. 021237
(smdesai@dmyl.com)

**PERKINS COIE LLP**
101 Jefferson Drive
Menlo Park, California  94025-1114
Telephone:  (650) 838-4300
Facsimile:  (650) 838-4350
*(Admitted pro hac vice)*
LISA KOBIALKA
(Lkobialka@perkinscoie.com)
ESHA BANDYOPADHYAY
(EBandyopadhyay@perkinscoie.com)
SEAN BOYLE
(Sboyle@perkinscoie.com)

Attorneys for Plaintiff
THE FREECYCLE NETWORK, INC.

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| THE FREECYCLE NETWORK, INC., an Arizona non-profit organization,<br><br>    Plaintiff,<br><br>v.<br><br>TIM OEY and JANE DOE OEY,<br><br>    Defendants. | CASE NO. CV 06-173-RCC<br><br>PLAINTIFF THE FREECYCLE NETWORK, INC.'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION<br><br>Date:     May 9, 2006<br>Time:     3:00 p.m.<br>Before:  Honorable Raner C. Collins<br>Location: Courtroom 5B |

## I. INTRODUCTION

Disagreeing with The Freecycle Network, Inc. ("The Freecycle Network") is one thing, but Defendant Tim Oey ("Defendant" or "Oey") has launched a campaign with the express goal of destroying The Freecycle Network's trademarks in violation of both federal and state laws. There is no doubt that The Freecycle Network owns the trademarks FREECYCLE, THE FREECYCLE NETWORK, and the graphic logo incorporating the mark FREECYCLE (collectively, the "Marks"). The Marks are protectable, distinctive, and they identify The Freecycle Network as the source of the Marks. The United States Patent and Trademark Office ("USPTO") has already issued a Notice of Allowance of the FREECYCLE mark and logo. Countless national news stories and commentaries have specifically recognized The Freecycle Network and the service it offers because of the significance and distinctiveness of its Marks. More importantly, Defendant himself has admitted that the Marks are protectable. Recognizing that Defendant's actions have caused, and continue to cause, irreparable harm to The Freecycle Network and its Marks, this Court granted a temporary restraining order against Defendant, restraining and enjoining him from further harming the Marks.

Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction ("Opposition") is nothing more than conclusory assertions based on erroneous and misleading statements of fact, and fails to provide any explanation whatsoever for statements made by Defendant that directly contradict his actions and statements of just months earlier. It also fails to state a single legitimate reason why a preliminary injunction should not be granted. Accordingly, The Freecycle Network respectfully requests that the Court grant a preliminary injunction against Defendant and others who are in active concert and participation with him.

## II. ARGUMENT

### A. THE FREECYCLE NETWORK'S CLAIMS ARE VALID, AND THE FREECYCLE NETWORK IS LIKELY TO PREVAIL ON THE MERITS

There is more than a *reasonable probability* of success that The Freecycle Network will prevail on the merits of its claims. *See* Gilder v. PGA Tour, Inc., 936 F.2d 417, 422 (9th Cir. 1991) (only a reasonable probability, not an overwhelming likelihood, is needed to grant a preliminary

injunction.) This standard has been interpreted to mean a "fair chance of success on the merits." Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995). As described in its initial motion ("PI Motion"), The Freecycle Network has demonstrated that The Freecycle Network's mark FREECYCLE is a distinctive, well-recognized and protectable mark, that Defendant has acted intentionally to contribute to the infringement of the Marks, and that Defendant has disparaged the Marks, in direct contradiction to statements he made earlier regarding the distinctiveness and importance of the Marks.

### 1. The Freecycle Network's Marks are Protectable

The Freecycle Network's Marks are distinctive. However, Defendant is incorrect in drawing the baseless conclusion that the "weight of the evidence" establishes that the Marks are not protectable. Opposition at 6. Defendant bases his position on two equally false and misleading assertions: that the Marks are not registered, and that the Marks have not acquired distinctiveness. *Id.* at 5-6.

First and foremost, Defendant himself has admitted that the Marks are protectable and distinct. For example, Defendant stated "[e]veryone in the Freecycle network needs to protect the 'Freecycle' trademark." *See* Complaint, Exh. A.[1] Defendant also stated in a separate email that:

> The Freecycle trademark [] …is real, Freecycle is using it, and has the right to defend it to a degree even without registration. The reason that the Freecycle trademark is important is that people are associating it with an excellent service. People join The Freecycle Network because they trust it. So the more we work to make Freecycle trustworthy, distinct, and useful, the more people recognize it, the more people join it, and the more power the network has to generate gifts rather than trash – which is THE goal."

*See* Complaint, Exhibit C. This admission alone is dispositive of the fact that Defendant recognized and understood that the Marks are protectable, distinctive and identified a particular source. Also evident from emails, Defendant believes that the Marks are still protectable, as he is attempting to destroy the acquired distinctiveness of the Marks by encouraging individuals to misuse the Marks. *Id.*, Exh. E. ("continued use of the word freecycle as a generic term by everyone will insure that it can never be trademarked….").

---

[1] Exhibits attached to the Complaint are at Exhibit A to the Declaration of Esha Bandyopadhyay, filed with the PI Motion.

Defendant fails to address that just a few months after sending an email recognizing the distinctiveness of the Marks, and the importance and significance of the Marks to The Freecycle Network, he took an entirely contrary position. This silence speaks volumes as his true motives. *Id.*, Exh. E. In fact, Defendant not only acknowledged the protectibility of the Marks, he also recommended and drafted the policy entitled "How To Protect The Freecycle Trademark" for The Freecycle Network to protect the distinctiveness already acquired by the Marks. Defendant has no excuse for taking an entirely contrary position now, other than attempting to exact revenge against The Freecycle Network and attempt inflict to significant harm to it.

Additional evidence provided with the PI Motion is the USPTO's determination that the FREECYCLE trademark and distinctive logo are trademarks suitable for registration, as it issued Notice of Allowances for these Marks, strong evidence that they are valid and protectable. PI Motion at 3. Furthermore, the volumes of press coverage and accolades The Freecycle Network has received over the years is a further indication that the Marks are distinctive, as they specifically identify a single source for the public -- The Freecycle Network. *See* PI Motion at 2-3. The overwhelming majority of the first fifty (50) results of a search for the word FREECYCLE using the Internet search engine Google™ refer to The Freecycle Network. *See* Declaration of Deron Beal in Support of Reply to PI Motion, filed herewith ("Beal Decl."), ¶ 3. Thus, the public identifies the mark FREECYCLE specifically with The Freecycle Network.

In addition, as can be seen from The Freecycle Network's Website, The Freecycle Network has approximately 3500 groups worldwide. These groups are found in 67 countries and The Freecycle Network relies on over 6000 volunteers to make its recycling efforts function internationally. *Id.* In an average month, The Freecycle Network's Web site gets about 14.8 million overall requests which translates to about 2.2 million page requests a month. The local member organizations of The Freecycle Network get a total of approximately 15-20 million hits per month. *Id.* Accordingly, the Marks are, without a doubt, distinctive, and consumers associate the Marks with The Freecycle Network.

Defendant's newfound position regarding the Marks is merely a self-serving tactic designed to elude liability for inducing others to infringe these valid and protectable Marks. Accordingly, Defendant's baseless assertion that the Marks are not protectable must be rejected.

### 2. Defendant Appears to Admit to Contributory Trademark Infringement

Defendant argues that The Freecycle Network's claim for contributory infringement is "non-sensical" because "[t]here is no indication that [Defendant] intended, knew, or should have known that a third party would use the alleged trademarks in an infringing manner …." Opposition at 7. Defendant's position appears to be based on the misguided belief that evidence of direct infringement from a third party is necessary for injunctive relief on a claim for contributory infringement. *Id*. at 8. However, Courts have held that in this context, a party encouraging infringement may sufficiently have assumed liability because the party has "[put] in the hands of his immediate vendee the means of deceiving the consumer, is chargeable with unfair competition." See Mershon Co. v. Pachmayr, 220 F.2d 879, n.3 (9th Cir. 1955); *see also* McCarthy on Trademarks, section 25:18 (section on contributory infringement stating that providing instrument of consumer deception is sufficient in some Courts to ground liability.) Accordingly, Defendant's assertions regarding third party infringement must be rejected.[2]

Furthermore, there is significant evidence of Defendant's scienter. Defendant admits that it "appears that Tim Oey encouraged others to continue to use [The Freecycle Network's Marks] as [] generic term[s]." Opposition at 7. Indeed, Defendant's own words in encouraging others to use the Marks in a way which infringes upon The Freecycle Network's valid trademark rights and in violation of The Freecycle Network's trademark policy demonstrates that intent. *Id.*, Exh. F ("…I have encouraged people to use the term freecycle as a generic term which would block The

---

[2] *See* Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 983-84 (9th Cir. 1999) (stating that one branch of contributory infringement encompasses instances when a Defendant "intentionally induces a third party to infringe the plaintiff's mark….") (emphasis added). While third party infringement will be established through the course of this litigation, The Freecycle Network is seeking injunctive relief to prevent infringement incited by Defendant. Numerous postings responding to Defendant's encouragement to harm the Marks demonstrate Defendant's tortious conduct and the misuse of the Marks. Similarly, there are a number of Web sites that are improperly using the Marks, which appear to have been launched in response to Defendant's actions.

Freecycle Network, and all others, from holding a trademark…."); Exh. E (encouraging individuals to "do your part" by using the mark FREECYCLE, in violation of The Freecycle Network's trademark policy Defendant drafted); *see also* Exh. G. There can be no question that Defendant intended, knew, or should have known that third parties would misuse the Marks, as Defendant instructed third parties to use the Marks in violation of a trademark policy designed to protect the acquired distinctiveness of the Marks – the very policy that he recommended to, and drafted for, The Freecycle Network. *Id.*, Exh. B. Thus, Defendant's instructions on how to misuse the Marks is done intentionally and in bad faith, as they are designed to destroy the acquired distinctiveness that the Marks have already achieved. The stated purpose is to ensure "that it can never be trademarked by any corporation ever" and that he hopes that everyone "will do your part to make it so." *Id.*, Exh. E.[3] Defendant's various emails and postings unequivocally establish that Defendant is ***intentionally inducing*** third parties to infringe the Marks. *Id.*, Exhs. A, B.

### 3. The Freecycle Network Will Succeed on the Merits of its Trademark Disparagement Claim

As articulated in The Freecycle Network's moving papers, The Freecycle Network can establish that (i) Defendant made a false statement(s) in regard to The Freecycle Network; (ii) that this false statement(s) was made with malice; and (iii) that The Freecycle Network suffered special damages as a result of the false statement(s) as required for a claim of trademark disparagement. Big O Tire Dealers, Inc. v. The Goodyear Tire & Rubber Co., 561 F.2d 1365, 1374 (10th Cir. 1977); *see* PI Motion at 7-8.[4] Despite an assertion that The Freecycle Network's claim for trademark disparagement is "unintelligible", Defendant provides at least three interpretations of this claim, thereby acknowledging that it is a recognized federal cause of action under 15 U.S.C. § 1125(a). Opposition at 8.

---

[3] *See also id.*, Exh. E ("have fun with it!"); Exh. G ("…please contact all the freecycle groups in your state and surrounding states to let them know that freecycle is a generic term….").

[4] *See also* Perfect 10, Inc. v. Cybernet Ventures, Inc., 167 F.Supp.2d 1114, 1128 (C.D.Cal. 2001) (recognizing a claim for trademark disparagement).

Here, Defendant has intentionally made numerous false statements about The Freecycle Network's Marks, which are apparent from the string of emails and Web postings provided in The Freecycle Network's PI Motion. *See also* PI Motion at 7-8. Indeed, as described above, there is no question that Defendant recognized the distinctiveness of the Marks, as well as the Mark's importance and significance to The Freecycle Network. *See e.g.*, Complaint, Exh. B ("The Freecycle trademark is very important to The Freecycle Network. Use of the term 'Freecycle' denotes a group that is officially approved by The Freecycle Network and one that the members can expect to adhere to a certain level of quality and security."); Exh. C. By making statements that directly contradict earlier statements regarding the distinctiveness of the Marks and how to protect the Marks, Defendant has acted with malice. For example, Defendant developed The Freecycle Network's trademark policy and stated that "while registration of the trademark is pending, the Freecycle trademark itself is not pending – it is real, Freecycle is using it and has the right to defend it." *Id.*, Exhs. B, C. A mere few months later, Defendant provided explicit instructions on how to violate The Freecycle Network's Marks and trademark policy, (*Id.*, Exhs. E, F, G), and stated that "it is legal for everyone to use the term freecycle….!" *Id.*, Exh. E.

By instructing individuals on how to destroy the Marks and violate The Freecycle Network's trademark policy that Defendant himself drafted, Defendant has acted with malice.[5] In fact, he admits that his intention was to "[d]rive The Freecycle Network nuts." Complaint, Exh. G. The Freecycle Network has suffered significant damages due to Defendant's malicious, false statements. These special damages include, but are not limited to, a loss of goodwill, decreased membership in The Freecycle Network, loss of potential corporate sponsorship, and potential loss of intellectual property rights in The Freecycle Network's Marks. *See* PI Motion at 7-8. Thus, The Freecycle Network has a likelihood of success of demonstrating trademark disparagement.

### 4. Defendant Concedes The Freecycle Network's Likelihood of Success on its Injurious Falsehood and Defamation Claims

Not surprisingly, Defendant does not contest The Freecycle Network's likelihood of

---

[5] *See* Complaint, Exh. F ("…I have encouraged people to use the term freecycle as a generic term which would block The Freecycle Network, and all others, from holding a trademark….").

success on the merits of its state law claims. As stated in the PI Motion, The Freecycle Network can establish each of the elements for both injurious falsehood and defamation. PI Motion at 6-11. It appears, therefore, that Defendant does not contest the likelihood of The Freecycle Network's success on these claims. Accordingly, preliminary injunctive relief is appropriate.

**B.      THE PROPOSED ORDER IS VALID AND ENFORCEABLE**

   **1.      The Proposed Order Satisfies F.R.C.P. 65(d)**

As Defendant recognizes, Federal Rule of Civil Procedure 65(d) requires that orders granting injunctive relief shall be "specific in terms" and describe "in reasonable detail" the actions to be restrained, such that it gives "notice of what the injunction actually prohibits." FED. R. CIV. P. 65(d); Granny Goose Foods, Inc. v. Bhd. Of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 444 (1974). Despite Defendant's assertions to the contrary (*see* Opposition at 9-11), The Freecycle Network's Proposed Order complies with the above standard. It specifically draws the boundaries of the acts to be proscribed, namely:

   (1)   Directly or indirectly inducing infringement of The Freecycle Network's intellectual property, including its trademarks or any variation or imitation thereof;

   (2)   Disparaging The Freecycle Network's intellectual property, including its trademarks or any variation or imitation thereof; and

   (3)   Disseminating false and misleading statements regarding The Freecycle Network and its intellectual property, including its trademarks or any variation or imitation thereof.

The Proposed Order does not contain mere directives to obey the law generally, but rather particular restraints against concrete actions that Defendant has already taken and which have already been shown to injure The Freecycle Network. Thus, the Proposed Order is reasonably detailed and gives Defendant fair notice of the scope of the acts to be enjoined. FED. R. CIV. P. 65(d); Granny Goose, 415 U.S. at 444.

Additionally, Defendant's argument that courts in the Eighth Circuit have "struck down injunctions which merely prohibit a party from infringing a trademark or using a term that is confusingly similar" (Opposition at 10) blatantly ignores established Ninth Circuit case law. In Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985), the Ninth

Circuit affirmed the district court's permanent injunction, which enjoined the Defendant from using "any name, designation or material . . . likely to cause confusion, mistake or deception as to source relative to plaintiff's trademark." It held that such an order sufficiently put the defendant "on notice that it was prohibited from using any name or designation which was likely to cause confusion," and on that basis concluded that the injunction "***precisely*** set[] out the forbidden conduct." *Id.* at 1022 (emphasis added). Thus, The Freecycle Network's Proposed Order, phrased in similar terms, also precisely sets out the prohibited conduct.[6]

Defendant's suggestion that he may be entitled to "non-trademark uses" and "fair uses" of The Freecycle Network's Marks constitutes an admission that the Marks are in fact valid and enforceable such that he would need to rely on such defenses to avoid liability. Opposition at 11. Despite his suggestion of such defenses, Defendant fails to allege that any such uses would fall within the conduct narrowly proscribed by the Proposed Order (particularly in light of the conduct at issue). Moreover, Defendant's assertion of such defenses never rises to anything beyond mere suggestion. Indeed, Defendant fails to satisfy his burden of proof by showing that each element of each defense has been met. Cairns v. Franklin Mint Co., 292 F.3d 1139, 1151 (9th Cir. 2002) (enumerating the elements of the classic fair use and nominative fair use defenses which the "Defendant must prove"). Thus, Defendant has not shown that he is entitled to "non-trademark uses" and "fair uses" of the Marks.

Finally, Defendant's claim that he has been "assiduously refrained" from using the mark FREECYCLE since issuance of the temporary restraining order constitutes nothing more than a contemptible and hypertechnical disregard of this Court's order. Opposition at 11. As outlined in The Freecycle Network's *Ex Parte* Motion for Order to Show Cause For Contempt Due to Failure to Comply with Temporary Restraining Order, Defendant's Internet postings constitute an ongoing and continuous use of the Marks such that The Freecycle Network suffers an ongoing and continuous injury to its reputation and goodwill from the postings' sustained visibility on the

---

[6] Moreover, broad injunctions are not impermissible. May Dep't Stores Co. v. N.L.R.B., 326 U.S. 376, 390-91 (1945) ("***Injunctions in broad terms*** are granted even in acts of the widest content, when the court deems them essential to accomplish the purposes of the act.").

Internet. Accordingly, Defendant should not be permitted to disregard the orders of this Court any longer based on feigned confusion drawn from discerning semantics, and Defendant's arguments in this regard must be rejected.

### 2. The Proposed Order is Not a Prior Restraint on Free Speech

Defendant would like this Court to believe that the Proposed Order "is an impermissible prior restraint on free speech." Opposition at 11. However, as this Court is well aware, the government is empowered to regulate commercial and non-commercial speech alike.[7] Indeed, there is no question that "the government may control [commercial] speech that is deceptive or misleading," and even in certain cases commercial speech that is "potentially misleading." Virginia, 425 U.S. at 771; Friedman v. Rogers, 440 U.S. 1, 13 (1978). First, Defendant's speech is commercial because it draws "attention to the plaintiff's [services]" and directly impacts The Freecycle Network's ability to attract new members and retain current members to use its services by harming The Freecycle Network's commercial reputation via its Marks. Eller Media Co. v. City of Oakland, Case No. C98-2237 FMS, 1998 WL 549494, at *4 (N.D. Cal. Aug. 28, 1998). Trademarks are consumer-oriented vehicles and Defendant identifies the commercial value of the Marks when he stated that the value and importance of the Marks are that "people are associating it with an excellent service." Complaint, Exh. C. Because the service is one offered to consumers in the marketplace, Defendant's statements regarding the Marks are commercial speech. Second, as this Court specifically found, Defendant "has disseminated false and misleading statements regarding The Freecycle Network and its intellectual property." Order Granting TRO at 1. Therefore, there is no question that the Proposed Order is a proper exercise of the Court's power to regulate false and misleading commercial speech.

Furthermore, non-commercial speech may be regulated "upon a showing that the speech is actually harmful." Zarate v. Younglove, 86 F.RD. 80, 102 (C.D. Cal. 1980) (citations omitted). As set forth in the PI Motion and at oral argument, the conduct at issue is harmful. This Court

---

[7] *See, e.g.*, Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748 (1976); In re Primus, 436 U.S. 412 (1978).

specifically found that Defendant's conduct "is causing immediate and irreparable harm to The Freecycle Network's reputation, its ability to protect its trademarks, its goodwill, and its ability to retain corporate sponsorship, and will continue to cause such immediate and irreparable harm unless and until [Defendant is enjoined]." TRO at 1-2. Therefore, actual harm has been established and thus the Proposed Order does not impermissibly regulate non-commercial speech.

Finally, the Proposed Order is not an unconstitutional prior restraint because the basis for its issuance is not content. Madsen v. Women's Health Ctr., 512 U.S. 753, 798 (1994); Avis Rent A Car System, Inc. v. Aguilar, 529 U.S. 1138, 1142 (2000) ("[A] content-neutral injunction is not treated as a prior restraint."). The Proposed Order is content-neutral because it is not based on "disagreement with the message [the speech] conveys." Outdoor Sys., Inc. v. City of Mesa, 997 F.2d 604, 614-15 (1993). In other words, the Proposed Order is strictly limited to prohibiting "unlawful conduct" by Defendant that has been specifically found by the Court, *i.e.*, directly or indirectly inducing infringement of, disparaging, and disseminating false and misleading statements regarding The Freecycle Network's intellectual property. Madson, 512 U.S. at 798. Thus, as a matter of law, it is not a prior restraint. Avis, 529 U.S. at 1142.

**C.     The Freecycle Network Has Demonstrated Significant Irreparable Harm, Which Defendant Conspicuously Fails to Address**

With respect to irreparable harm, The Freecycle Network is merely seeking to prevent Defendant from making defamatory statements that are detrimental to its hard-earned reputation and the goodwill of The Freecycle Network's distinctive Marks. Such relief has no harmful effect on Defendant. The Freecycle Network's moving papers clearly articulate the significant irreparable harm suffered as a result of Defendant's unlawful conduct. PI Motion at 11-12. Under the Lanham Act, once a plaintiff establishes likelihood of success on the merits, there arises a presumption that the plaintiff will suffer irreparable harm unless an injunction is entered.[8] As discussed above, The Freecycle Network has established a strong likelihood of success on the

---

[8] *See* Brookfield, 174 F.3d at 1066; *see also* El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1038 (9th Cir. 2003) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 n.4 (9th Cir. 2000)) ("[i]n a trademark infringement claim, 'irreparable injury may be *presumed* from a showing of likelihood of success on the merits.'") (emphasis added).

merits. Accordingly, there exists a presumption that The Freecycle Network will suffer irreparable harm sufficient to support entry of an immediate injunction.

There is significant evidence that The Freecycle Network will suffer irreparable harm unless Defendant is enjoined from inducing others to infringe the Marks. Defendant's conduct is detrimental to the reputation and goodwill of the distinctive Marks, developed over years of using The Freecycle Network's Marks to identify its reusing, recycling and gifting efforts. In fact, Defendant's actions (as he himself admits) are aimed at destroying the value of The Freecycle Network's Marks. *See* Complaint, Exhs. E, F, and G. Furthermore, The Freecycle Network faces the possibility of a complete withdrawal of sponsorship due to Defendant's defamation campaign. Accordingly, it is clear that The Freecycle Network is suffering, and will continue to suffer, irreparable harm as a result of Defendant's conduct.[9]

Not surprisingly, in its Opposition, Defendant does not (presumably because it cannot) address any of these arguments in favor of a finding of irreparable harm. Opposition at 13. Accordingly, Defendant's conclusory remarks regarding "irrevocable (sic) harm" (*id.*) and criticism of The Freecycle Network (*id.*) must be rejected, and a preliminary injunction should be granted in The Freecycle Network's favor.

### III.     CONCLUSION

In light of the foregoing, The Freecycle Network respectfully requests the Court to grant its Motion for Preliminary Injunction.

Dated: May 8, 2006      DECONCINI MCDONALD YETWIN
                        & LACY, P.C. & PERKINS COIE LLP


                        By:     /s/  Lisa Kobialaka
                            Attorneys for Plaintiff
                            The Freecycle Network, Inc.

---

[9] *See, e.g.,* Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) (stating that "[d]amage to…goodwill qualif[ies] as irreparable harm.")