**DeCONCINI McDONALD**
 **YETWN & LACY, P.C.**
2525 East Broadway, Suite 200
Tucson, Arizona 85716-5300
Telephone: 520-322-5000
Facsimile: 520-322-5585
LISA ANNE SMITH, AZ Bar No. 016762
(lsmith@dmyl.com)
SHEFALI MILCZAREK-DESAI, AZ Bar No. 021237
(smdesai@dmyl.com)

**PERKINS COIE LLP**
101 Jefferson Drive
Menlo Park, California 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350
(Admitted *pro hac vice*)
LISA KOBIALKA
(Lkobialka@perkinscoie.com)
ESHA BANDYOPADHYAY
(EBandyopadhyay@perkinscoie.com)
SEAN BOYLE
(Sboyle@perkinscoie.com)

Attorneys for Plaintiff
THE FREECYCLE NETWORK, INC.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| THE FREECYCLE NETWORK, INC., an Arizona non-profit organization,<br><br>    Plaintiff,<br><br>v.<br><br>TIM OEY and JANE DOE OEY,<br><br>    Defendants. | CASE NO. CV 06-173 RCC<br><br>**THE FREECYCLE NETWORK, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO STAY OR TRANSFER**<br><br>Date: June 16, 2006<br>Time: 11 a.m.<br>Judge: Hon. Raner C. Collins<br>Location: Tucson Courtroom 5B |

**Table of Contents**

I. INTRODUCTION ..................................................................................................... 1

II. FACTUAL BACKGROUND ................................................................................... 2

    A. The Freecycle Network ................................................................................ 2

    B. The Freecycle Network's Claim Against Mr. Oey ....................................... 2

    C. The Unrelated California Action .................................................................. 5

III. ARGUMENT ............................................................................................................ 5

    A. The Freecycle Network's Choice of Forum Should Be Respected and Accorded Great Weight ................................................................................ 5

    B. This Court Has Specific Personal Jurisdiction Over Mr. Oey ..................... 6

        1. Mr. Oey Has Purposefully Availed Himself of Tucson ...................... 7

        2. The Claims Arise Out of Mr. Oey's Forum-Related Activities ........... 9

        3. The Exercise of Jurisdiction Is Reasonable and Just ........................... 9

    C. Defendants Have Failed to Satisfy the Statutory Criteria of Section 1404(a) and The Jones Factors ................................................................................. 10

    D. There Is No First Filed Case ...................................................................... 11

    E. This Case Is Properly Brought in Tucson and Should Not Be Stayed ....... 12

IV. CONCLUSION ...................................................................................................... 14

## Table of Authorities

**CASES**

Alltrade, Inc. v. Uniweld Prods., Inc.,
   946 F.2d 622 (9th Cir. 1991) ............................................................................................. 11

Decker Coal Co. v. Commonwealth Edison Co.,
   805 F.2d 834 (9th Cir. 1986) ............................................................................................... 9

Doe v. Unocal, Inc.,
   248 F.3d 915 (9th Cir. 2001) ........................................................................................... 7, 9

Dusen v. Barrack,
   376 U.S. 612 (1964) .......................................................................................................... 10

E. & J. Gallo Winery v. F.& P. S.p.A.,
   899 F.Supp. 465 (E.D. Cal. 1994) .................................................................................... 6, 7

Eng v. Stein,
   123 Ariz. 343, 559 P.2d 796 (Ariz. 1979) ........................................................................... 5

Gulf Oil Corp. v. Gilbert,
   330 U.S. 501 (1947) ............................................................................................................ 5

Hanson v. Denckla,
   357 U.S. 235 (1958) ............................................................................................................ 7

Jacobson v. Hughes Aircraft Co.,
   105 F.3d 1288 (9th Cir. 1997) ............................................................................................. 9

Jones v. GNC Franchising, Inc.,
   211 F.3d 495 (9th Cir. 2000) ............................................................................................... 8

Koster v. Lumbermens Mut. Cas. Co.,
   330 U.S. 518 (1947) ............................................................................................................ 5

Lockman Found. v. Evangelical Alliance Mission,
   930 F.2d 764 (9th Cir. 1991) ............................................................................................... 6

Lou v. Belzberg,
   834 F.2d 730 (9th Cir. 1987) ............................................................................................... 5

Pacesetter Sys., Inc. v. Medtronic, Inc.,
   678 F.2d 93 (9th Cir. 1982) ............................................................................................... 11

Piper Aircraft Co. v. Reyno,
   454 U.S. 235 (1981) ............................................................................................................ 6

S.C. Johnson & Son, Inc. v. Gillette Co.,
   571 F. Supp. 1185 (N.D. Ill. 1983) ................................................................................. 7

Saint-Gobain Calmar, Inc. v. Nat'l Products Corp.,
   230 F. Supp. 2d 655 (E.D. Pa. 2002) ............................................................................... 7

Sorenson v. DialmerChrysler AG,
   2003 U.S. Dist. LEXIS 6294 (D. Cal. 2003) ................................................................... 7

Spudnuts, Inc. v. Lane,
   139 Ariz. 35, 676 P. 2d 669 (Ariz. Ct. App. 1984) .......................................................... 4

Stangvik v. Shiley, Inc.,
   54 Cal.3d 744 (1991) ....................................................................................................... 6

**STATUTES**

Arizona Revised Statues
   A.R.S. § 25-215(d) ........................................................................................................... 4

United States Code, Title 28 (28 U.S.C.)
   28 U.S.C. 1404(a) .......................................................................................................... 10

# I.
# INTRODUCTION

The Freecycle Network, Inc. ("The Freecycle Network"), a non profit organization based in Arizona, is suing Tim Oey and Jane Doe Oey, individually, for Mr. Oey's tortious conduct toward The Freecycle Network. Mr. Oey's tortious conduct toward The Freecycle Network, conduct which Mr. Oey has not disputed at all in any of his pleadings, constitutes trademark disparagement, injurious falsehood, defamation, and intentional interference with business relations. Despite Mr. Oey's earlier opposition to The Freecycle Network's requested injunctive relief based on the claim that this dispute should be in a different forum, this Court issued a TRO and Preliminary Injunction against him. Nothing has changed that makes a transfer (or stay) appropriate given the specific facts of this case.

Deference to The Freecycle Network's choice of its home forum is appropriate. Furthermore, Mr. Oey has purposefully availed himself of Tucson. Mr. Oey provided The Freecycle Network with advice and assistance on many aspects of The Freecycle Network's non-profit business, including its Web site and its trademark policy. Mr. Oey does not dispute that he was a very active and important member of The Freecycle Network and that The Freecycle Network relied upon his strategic business guidance in its day to day business activities.

Moreover, this is not a second-filed lawsuit between the same parties for the same claims. This lawsuit involves the personal liability of Mr. Oey based on his individual conduct against The Freecycle Network. Defendants are not parties to the unrelated lawsuit pending in California that Defendants claim is the "first filed" case. Rather, that case was filed by FreecycleSunnyvale, an unincorporated non-profit association, against The Freecycle Network for intentional interference and a declaratory judgment that The Freecycle Network's mark, FREECYCLE, and the logo for this mark ("Marks"), are generic, and that FreecycleSunnyvale's use of the Marks does not constitute trademark infringement. *See, e.g.*, FreecycleSunnyvale's Amended Complaint at ¶¶ 43, 45. These claims have nothing to do with Mr. Oey as an individual or his conduct, and are not dispositive of The Freecycle Networks' claims against Mr. Oey in this case. Accordingly, the cases are unrelated and there is no reason to transfer or stay this case.

## II.
## FACTUAL BACKGROUND

**A.  The Freecycle Network**

The Freecycle Network is a non-profit organization founded in Tucson, Arizona, that provides forums for recycling and gifting in communities across the nation.  The organization was started in Tucson, Arizona, with a single recycling center and its only office and headquarters are located in Tucson.  Declaration of Deron Beal in Support of The Freecycle Network's Opposition filed herewith ("Beal Decl.") at ¶ 2.  Since its inception in 2003, The Freecycle Network has grown to become the world's largest Internet Web site dedicated to the promotion of reusing, recycling and gifting.  The Freecycle Network maintains an internet Web site, www.freecycle.com, which allows visitors to locate their local recycling groups or create one of their own.  Through its network, The Freecycle Network encourages and helps to coordinate the efforts of member groups throughout the world to reuse, recycle, and gift goods.  Today, The Freecycle Network is a worldwide organization, with thousands of local recycling groups and more than an estimated two million individual members.  *See* Declaration of Lisa Kobialka in Support of The Freecycle Network's Opposition filed herewith ("Kobialka Decl."), ¶¶ 2-3, Exhs. 1-2.  In fact, The Freecycle Network has approximately 3500 groups worldwide in 67 countries and relies on over 6000 volunteers to make its recycling efforts function internationally.  *Id.*

For years, The Freecycle Network has been using the distinctive and now famous trademarks FREECYCLE and THE FREECYCLE NETWORK, as well as a company logo.  These marks have been used exclusively and continuously and constitute the majority of The Freecycle Network's intellectual property.  To protect its intellectual property, The Freecycle Network developed a Trademark and Copyright Policy.  *Id.*

**B.  The Freecycle Network's Claim Against Mr. Oey**

Mr. Oey held several prominent positions for The Freecycle Network during 2004 and 2005. He was the head of the New Website Planning Team for The Freecycle Network.  He was tasked with leading a group of the top moderators of the Freecycle Network worldwide in compiling a wish list / plan for an entirely new global Web site for the Freecycle Network.  As the

- 2 -

head of the New Website Planning Team, Mr. Oey was to provide his recommendations to The Freecycle Network's only office based in Tucson. Beal Decl. ¶ 5.

Mr. Oey was also the head of FreecycleNext, which was a group formed by The Freecycle Network specifically for the moderators of all of The Freecycle Network's local member groups worldwide. The Freecycle Network formed FreecycleNext so that all moderators beyond the top 25 also had a forum to provide a wish list and input for a new global Web site design project. As the head of The Freecycle Network's FreecycleNext group, Mr. Oey was again tasked to collect comments, provide suggestions and make recommendations to The Freecycle Network's only office based in Tucson. *Id.* ¶ 6.

Additionally, Mr. Oey was a member of a The Freecycle Network's Penguin Patrol, an international planning group consisting of some 4-6 worldwide moderators specifically tasked with developing guidelines and policies for the protection of The Freecycle Network's intellectual property, including copyright and trademark protection. Mr. Oey personally drafted and developed The Freecycle Network's Trademark and Copyright Policy and frequently commented on how to improve upon these guidelines and make these guidelines user friendly. *Id.* ¶ 7.

Mr. Oey also published these guidelines to the member groups. He provided advice and made numerous detailed recommendations to The Freecycle Network about multiple aspects of its intellectual property. For example, he provided detailed instructions on how to use, protect and identify The Freecycle Network's intellectual property in emails or to post trademarked and copyrighted information on The Freecycle Network's Web site. In numerous emails, Mr. Oey provided The Freecycle Network with recommendations, suggestions and advice about protecting its intellectual property. *Id.* ¶¶ 8-10; *see also* Kobialka Decl., Exhs. 1-2.

Mr. Oey was also one of four or five leaders of The Freecycle Network's main worldwide moderator group, the Freecycle Modsquad, where rules are discussed and voted on by moderators, binding polls of moderators are taken and official notices are made to moderators worldwide. Mr. Oey shared this worldwide leadership with Mr. Beal himself and two or three other moderators. As a leader of The Freecycle Network's "Modsquad," Mr. Oey was tasked with helping lead this

main group consisting of well over 1000 moderators worldwide at the time, informing worldwide moderators, collecting comments, providing suggestions and making recommendations, once again to The Freecycle Network's only office based in Tucson. *Id.* ¶ 11.

On or around September 15, 2004, the professional relationship between The Freecycle Network and Mr. Oey came to an end because Mr. Oey's conduct was contrary to mission of The Freecycle Network. Based on information provided to The Freecycle Network, such conduct included charging money to members of the local group of The Freecycle Network with which Mr. Oey was a moderator.

After being asked to step down from his place in The Freecycle Network, Mr. Oey began a direct attack on The Freecycle Network's intellectual property, including violating the policies he drafted and recommended to The Freecycle Network, as well as encouraging others to do the same. In fact, Mr. Oey personally disseminated instructions to third parties about how to violate The Freecycle Network's Marks. Due to Mr. Oey's destructive and tortious actions, The Freecycle Network has suffered damages to its good reputation, its goodwill and is at a significant risk of losing its corporate sponsorship, which has already been reduced due to its loss of reputation and goodwill. Kobialka Decl., Exhs. 1-2.

The Freecycle Network's claims for damages and injunctive relief are against Mr. Oey and his wife as individuals for contributory trademark infringement and trademark disparagement, injurious falsehood, defamation, and intentional interference with a business relationship. Ms. Oey is equally subject to jurisdiction by virtue of her marriage to Mr. Oey. Pursuant to A.R.S. § 25-215(d) ("in an action on such a debt or obligation the spouses shall be sued jointly and the debt or obligation shall be satisfied: first from the community property, and second, from the separate property of the spouse contracting the debt or obligation"); *see also* Spudnuts, Inc. v. Lane, 139 Ariz. 35, 36, 676 P. 2d 669, 670 (Ariz. Ct. App. 1984). A.R.S. § 25-215(d) provides that if a plaintiff wants to hold a marital community accountable for an obligation, both spouses

must be sued jointly"). A judgment against one spouse does not otherwise bind the community. Eng v. Stein, 123 Ariz. 343, 345-46, 559 P.2d 796, 798-99 (Ariz. 1979).[1]

**C.     The Unrelated California Action**

The California action involves different parties and different claims. The Freecycle Network has been sued by an unincorporated association, allegedly based in Sunnyvale, California ("the Sunnyvale group"). The Sunnyvale group is suing The Freecycle Network for intentional interference with its relationship with Yahoo! Groups and for a declaratory judgment that The Freecycle Network's Marks are generic and that the Sunnyvale group does not infringe these Marks. The allegations in support of the Sunnyvale group's claim against The Freecycle Network are that The Freecycle Network requested that the Sunnyvale group discontinue its improper use of its Marks. After the Sunnyvale group refused to do so, The Freecycle Network contacted Yahoo! regarding these trademark violations and requested the removal of the Sunnyvale group's Yahoo! Group.

**III.
ARGUMENT**

**A.     The Freecycle Network's Choice of Forum Should Be Respected and Accorded Great Weight**

The Freecycle Network's choice of forum is accorded great weight, a point which Defendants concede in their own motion. Mot. To Stay or Transfer at 2; Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 503 (1947); Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987). In fact, according to the United States Supreme Court, a resident's choice of forum is given a strong preference: "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947). "[T]he reasons advanced for this frequently reiterated rule apply to only to residents of the forum state: (1) if the plaintiff is a

---

[1] In light of this law, references to jurisdiction against Mr. Oey justify jurisdiction against Mrs. Oey, as well.

- 5 -

resident of the jurisdiction in which the suit is filed, the plaintiff's choice of forum is presumed to be convenient (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 235-36 (1981)); and (2) a state has a strong interest in assuring its own residents an adequate forum for the redress of grievances." Stangvik v. Shiley, Inc., 54 Cal.3d 744, 754 (1991) (citations omitted)).

The Freecycle Network's choice of jurisdiction is presumed convenient because The Freecycle Network resides in Tucson. *Id.* (citations omitted). In fact, The Freecycle Network was founded in Tucson and is now headquartered in Tucson. Deron Beal, the founder of The Freecycle Network and one of the key fact witnesses who will testify at trial on behalf of The Freecycle Network, is a resident and located in Tucson. In fact, all of The Freecycle Network's board members are located in Tucson, Arizona. As such, the key witnesses are all located in Tucson. Beal Decl. ¶¶ 2-3.

Furthermore, all of The Freecycle Network's documentation relevant to this litigation is located in Tucson. Mr. Oey's statements are directed at the Tucson-based The Freecycle Network, and the resulting harm from Mr. Oey's conduct is occurring in Tucson. *See* Kobialka Decl., Exhs. 1-2. Mr. Oey reported back to The Freecycle's Network's Tucson office, the only office and headquarters for The Freecycle Network. Beal Decl. ¶¶ 2, 4-11. For these reasons, as well as the fact that Tucson is The Freecycle Network's home forum, there is no question that Tucson is convenient.

This Court also has a strong interest in assuring that its resident has an adequate forum for redress of its specific grievances against Mr. Oey. This is particularly true where he has subjected himself to jurisdiction in Arizona, as described herein. This is not a case of forum shopping because The Freecycle Network has brought a claim in its home state, a jurisdiction with a strong interest in assuring its own residents an adequate forum for the redress of grievances.

**B.    This Court Has Specific Personal Jurisdiction Over Mr. Oey**

Contrary to Defendants' (mis)statement of the law, Defendants, not The Freecycle Network, bear the heavy burden of demonstrating the propriety of a transfer. *See* Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 767 (9th Cir. 1991); *see also* E. & J. Gallo Winery

- 6 -

v. F.& P. S.p.A., 899 F.Supp. 465, 466 (E.D. Cal. 1994); Defs.' Opp. at 3 ("the burden of establishing that the case should be transferred is The Freecycle Network's"). As described below, Defendants have failed to meet this burden.[2] Furthermore, Mr. Oey has purposefully availed himself of Tucson. Purposeful availment means that Mr. Oey "[has] performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Doe v. Unocal, Inc., 248 F.3d 915, 924 (9th Cir. 2001), quoting Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir.1990). As described below, Mr. Oey has affirmatively acted with respect to The Freecycle Network, such that he has purposefully availed himself of Tucson.

   1.   **Mr. Oey Has Purposefully Availed Himself of Tucson**

Personal jurisdiction is appropriate over Mr. Oey. The Ninth Circuit has established that the Court can claim personal jurisdiction over a non-resident defendant if he has established sufficient minimum contacts within the district. Unocal, 248 F.3d at 923; *see also* Hanson v. Denckla, 357 U.S. 235, 250-53 (1958). Mr. Oey has satisfied all three steps of the Ninth Circuit's three-part test to evaluate the nature and quality of a defendant's contacts with a particular forum. Unocal, 248 F.3d at 923, citing Gordy v. Daily News, L.P., 95 F.3d 829, 831-32 (9th Cir. 1996).[3] As described below, Mr. Oey has acted and performed in such a manner that he has invoked the

---

[2] Defendants' opposition relies upon three cases which they claim support their argument that the case should be transferred to California. Sorenson v. DialmerChrysler AG, 2003 U.S. Dist. LEXIS 6294 (D. Cal. 2003); S.C. Johnson & Son, Inc. v. Gillette Co., 571 F. Supp. 1185 (N.D. Ill. 1983); and Saint-Gobain Calmar, Inc. v. Nat'l Products Corp., 230 F. Supp. 2d 655 (E.D. Pa. 2002). Unlike here, the plaintiffs in these cases filed suits in districts *outside* of their home forums, a selection which is automatically given less deference. Furthermore, the new venue sought by the defendants in these cases were the sole locations for documents, witnesses, and other evidentiary matters, which is not the case here. Finally, each of these cases involved solely patent infringement claims, unlike the present case.

[3] The three part test involves consideration of the following:

(1) The nonresident defendant must engage in some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) The claim must be one which arises out of or results from the defendant's forum-related activities; and

(3) Exercise of jurisdiction must be reasonable.

- 7 -

benefits and protections of the laws of this Court. Additionally, The Freecycle Network's claims arise out of and result from Mr. Oey's forum-related activities. Finally, exercise of jurisdiction is reasonable in light of Mr. Oey's activities in Tucson. *Id.*

Furthermore, considering the wide array of factors considered in this analysis, the overwhelming weight of these factors favor maintaining this case in Tucson, including the fact that the relevant policies at issue in this case were implemented in Tucson, Tucson is The Freecycle Network's choice of forum, Mr. Oey's substantive contacts with Tucson, Mr. Oey's statements made directed at the Tucson-based The Freecycle Network, among others. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

As described in detail in the fact section, Mr. Oey was intimately involved in numerous strategic business decisions for The Freecycle Network on an ***international*** level. Indeed, his involvement with The Freecycle Network cannot be understated. He was:

(1) the head of the New Website Planning Team,
(2) the head of FreecycleNext, a group formed by The Freecycle Network for all local member moderators worldwide,
(3) one of the few leaders of The Freecycle Modsquad, which was The Freecycle Network's main worldwide moderator group,
(4) a very active member of The Freecycle Network's Penguin Patrol and
(5) the individual largely responsible for the implementation, drafting and execution of The Freecycle Network's Trademark and Copyright Policy.

Beal Decl. ¶¶ 4-11; *see also* Kobialka Decl., Exhs. 1-2. Given these prominent roles in The Freecycle Network, Mr. Oey did more than allegedly "sit at his computer in California and send emails"; he was, in fact, an integral participant in the daily activities of The Freecycle Network.

As he was active in these various roles that he held at The Freecycle Network, Mr. Oey worked directly and closely with the founder of The Freecycle Network in his duties as one of the leaders of these various groups, such as the Modsquad, critical to the success, growth, development and strategic planning of The Freecycle Network. Beal Decl. ¶¶ 4-11. He was the head of very important projects critical to The Freecycle Network's mission and reported to The Freecycle Network's Tucson office, the only office and headquarters of The Freecycle Network. Thus, there is no question that Mr. Oey has acted and performed so closely with The Freecycle

Network such that he has voluntarily subjected himself to jurisdiction in Tucson. Unocal, 248 F.3d at 923.

### 2. The Claims Arise Out of Mr. Oey's Forum-Related Activities

This underlying dispute centers around Mr. Oey's decision to act in a manner completely contrary to his previous activities and the recommendations he himself made when he was involved with The Freecycle Network as a head of numerous strategic and planning committees vital to The Freecycle Network's existence. For example, claims in this case involve his instructions on how to violate The Freecycle Network's Trademark and Copyright Policy that he himself drafted and destroy the goodwill in The Freecycle Network's trademarks that he sought to protect. Beal Decl. ¶¶ 7-10, Exhs. 1-2; *see also* Kobialka Decl., Exhs. 1-2. Thus, as described above, there can be no question that The Freecycle Network's claims arise our of Mr. Oey's forum-related activities. Unocal, 248 F.3d at 923.

### 3. The Exercise of Jurisdiction Is Reasonable and Just

As described herein, Mr. Oey has purposefully availed himself of Tucson. Furthermore, this forum is convenient and is The Freecycle Network's home forum, making the exercise of jurisdiction is reasonable and just. Unocal, 248 F.3d at 923. Mr. Oey, on the other hand, has not demonstrated, and cannot attempt to do so on reply, a "strong showing of inconvenience to warrant upsetting plaintiff's choice of forum" and to obtain transfer. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

In fact, there would significant hardship to The Freecycle Network if the case was to be transferred given this Court's familiarity with the details and facts of this case. Jacobson v. Hughes Aircraft Co., 105 F.3d 1288, 1302 (9th Cir. 1997) (the district court must consider the possible hardship to the plaintiff if the court grants the transfer and the deference to be accorded to the plaintiff's choice of forum). This Court has had before it extensive motion practice involving The Freecycle Network's Motion for TRO and Preliminary Injunction, and Motion for Order to Show Cause, which have included several oral arguments and an evidentiary hearing involving the

examination of Mr. Beal. As a result of this briefing, this Court has issued an Order on May 11, 2006, setting forth the allegations underlying the lawsuit.

A transfer would require The Freecycle Network to educate a different Court on the issues and claims unique and individual to this particular dispute, which have no bearing on the case in California which involves a different party and different causes of action. In contrast, maintaining the lawsuit in Tucson does not create any hardship on Defendants who have Tucson-based counsel who have been involved since the outset of this litigation. Accordingly, the hardship to The Freecycle Network far outweigh any benefit from transfer, as jurisdiction in Tucson is reasonable and just in this case.

**C.    Defendants Have Failed to Satisfy the Statutory Criteria of Section 1404(a) and The Jones Factors**

Defendants have simply not met their heavy burden of demonstrating that transfer is appropriate, as described above. 28 U.S.C. 1404 (a) calls for transfer to a *more* convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer. Van Dusen v. Barrack, 376 U.S. 612, 645-46 (1964). Additionally, Section 1404(a) calls for a change of venue if it proves more convenient for the witnesses of the case. Finally, §1404(a) calls for a change of venue if it serves the interest of justice.

Here, The Freecycle Network, its founder and all of its board members, as well as relevant documentation, are located in Tucson, making Tucson the most convenient forum. Beal Decl. ¶ 2. Furthermore, as described above, the issues in this case arise from actions taken by Mr. Oey against The Freecycle Network that have negatively impacted the operation of the organization in Arizona. Transfer to the district in which Mr. Oey resides only serves convenience for Mr. Oey, while placing significant hardship and inconvenience upon The Freecycle Network. Thus, Defendant's proposed alternative venue is not more convenient for the case overall. *Id*.

Furthermore, the California action does not involve Mr. Oey, as he is not a named party in the litigation and involves totally different claims, which are not dispositive of The Freecycle Network's claims against Mr. Oey for his individual tortious conduct. Thus, transfer would not

- 10 -

Case 4:06-cv-00173-RCC    Document 43    Filed 05/18/2006    Page 14 of 18

serve the interests of justice, as there is no duplicity of judicial efforts between the two cases. The two lawsuits involve separate and distinct opponents, facts, and issues. In the immediate case, The Freecycle Network has asserted causes of action for trademark disparagement, injurious falsehood, defamation, and intentional interference with business relations. In the California case, an unrelated party has asked for interference for facts specific to its situation, and a determination on its infringement of The Freecycle Network's trademarks, as well as declaration that The Freecycle Networks' trademarks are generic.

Whether Mr. Oey has committed defamation, trademark disparagement, injurious falsehood or intentional interference with business relations, has no effect on a totally different entity's claims in the California case. Thus, there is no risk of inconsistent rulings. Both courts are not, as Defendants broadly and inaccurately claim, deciding issues such as validity and infringement of The Freecycle Network's trademarks. Essentially, Defendants appear to believe that The Freecycle Network should be forced to compromise the integrity of its properly filed case in its home state simply because it has been sued in California by another party for separate causes of action. As such, changing venue in order to consolidate these cases is inappropriate and would neither serve judicial economy nor interest. For these reasons, Defendants' motion should be denied.

**D.  There Is No First Filed Case**

The first to file rule "may be invoked when a complaint involving the same parties and issues has already been filed in another district." Alltrade, Inc. v. Uniweld Prods., Inc. 946 F.2d 622, 625 (9th Cir. 1991), quoting Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.2d 93, 95 (9th Cir. 1982). Of course, if the issues and parties were not the same, adherence to the first-to-file rule would be a reversible error for it would constitute a misapplication of the law. Alltrade, 946 F.2d at 628 n.13, citing Pacesetter, 678 F.2d at 96. "As for the respective convenience of the two courts, normally [this argument] should be addressed to the court in the first-filed action. Apprehension that the first court would fail to appropriately consider the convenience of the parties and the witnesses should not be a matter for our consideration." Alltrade, 946 F.2d at 628.

- 11 -

As stated earlier, there are obvious differences between the parties and issues involved in the California action and this action. Defendants have attempted in their motion to portray the Sunnyvale group and Tim Oey as one inseparable and cohesive unit, which is grossly misleading. In reality, Mr. Oey appears merely to be a member of the plaintiff in the California action. This tenuous connection does not transform the California action into a first filed case. That Defendants are attempting to portray the two parties as one for the sake of using the first to file rule is inappropriate.

Secondly, as much as Defendants would like to broadly construe the issues in California action and this action such that they sound the same, a closer examination of the allegations made and facts asserted in each Complaint show the cases fundamentally differ in substance. In fact, contrary to Defendants' assertion, a declaration of non-infringement in the California action would not resolve the claims against Tim Oey for inducement, defamation, injurious falsehood, and intentional interference with business relations, as these claims are based on different facts. For example, this Court could still determine that Mr. Oey's conduct in making statements has constituted interference, injurious falsehood and defamation, notwithstanding the attack on The Freecycle Network's trademarks. Consequently, Defendants' motion should be denied.

**E.      This Case Is Properly Brought in Tucson and Should Not Be Stayed**

As mentioned in the above discussion, a careful comparison of the California action to this case reveals separate and distinct parties and issues. Though Defendants use overarching language in their motion to portray these crucial aspects as being the same across both cases, in reality the differences between the two actions are clear and obvious. No judicial economy will be preserved by transferring the instant case to California or by staying the instant case pending a judgment in California. In the interest of justice, the immediate case should be allowed to proceed without reliance upon or influence from the California case. For the reasons described above, including the fact that the California case is unrelated to the present action, this case should not be stayed.

Furthermore, there is nothing more insulting than the allegation that there has been "judge shopping." Defs.' Mot. at 10. The Freecycle Network properly brought this case in Tucson, its

home forum. In what only can be described as a desperate attempt at revisionist history, Defendants repeatedly state that The Freecycle Network "treats FreecycleSunnyvale and Tim Oey as the same party." Defs.' Mot. at 9. To this end, Mr. Oey suggests that the Sunnyvale group inappropriately failed to serve counsel for FreecycleSunnyvale, the law firm of Mayer, Brown, Rowe & Maw ("Mayer Brown") with the original complaint in this action, and then inappropriately contacted Mayer Brown in regard to Mr. Oey's failure to comply with the TRO granted by this Court.

      Defendants' assertions are disingenuous, at best. Indeed, The Freecycle Network did ***not*** serve Mayer Brown with the original complaint in this action, as Mayer Brown, at that time, represented only the Sunnyvale group. The Freecycle Network at the time did not know Mr. Oey's status with the plaintiff in the California action, and did not know whether Mayer Brown was representing Mr. Oey as an individual for claims that involved his personal liability. During the hearing on The Freecycle Network's *Ex Parte* Motion for Temporary Restraining Order before this Court, however, Mayer Brown appeared telephonically on behalf of Mr. Oey as an individual. Indeed, the Court's minutes from this hearing indicate the same. Kobialka Decl., ¶ 4, Exh. 3. At no time did Mayer Brown inform The Freecycle Network that it was ***not*** representing Mr. Oey until receipt of a letter from Mr. Dennis Corgill of Mayer Brown of May 1, 2006, stating that Mayer Brown was no longer representing Mr. Oey as an individual. Thus, The Freecycle Network had no way of knowing that at that time, Mr. Oey was only represented by his Arizona counsel. *Id.*, ¶ 5, Exh. 4. Accordingly, The Freecycle Network's letter, sent prior to May 1 2006, regarding Mr. Oey's failure to abide by the terms of the TRO in this action was appropriately directed to Mr. Oey's counsel of record, Mayer Brown.

      Indeed, The Freecycle Network has consistently treated Mr. Oey, the individual, as a separate party from the Sunnyvale group. To the contrary, it is Mr. Oey who is attempting to tie his personal liability (based on his personal conduct) with the Sunnyvale group. Moreover, Mr. Oey, the individual, has never brought any sort of claim against The Freecycle Network. Thus, he

simply has no basis for a "first to file" argument and his request to stay or transfer this action on this basis should be denied.

## IV. CONCLUSION

For the foregoing reasons, The Freecycle Network respectfully requests this Court to deny Defendants' Motion to Transfer or Stay.

DATED: May 18, 2006　　　　　　　　　　　　**PERKINS COIE LLP**


By ＿＿/s/ Lisa Kobialka＿＿＿＿＿
　　　Lisa Kobialka

Attorney for Plaintiff
THE FREECYCLE NETWORK, INC.