**DeCONCINI McDONALD
 YETWN & LACY, P.C.**
2525 East Broadway, Suite 200
Tucson, Arizona  85716-5300
Telephone:  520-322-5000
Facsimile:  520-322-5585
LISA ANNE SMITH, AZ Bar No. 016762
(lsmith@dmyl.com)
SHEFALI MILCZAREK-DESAI, AZ Bar No. 021237
(smdesai@dmyl.com)

**PERKINS COIE LLP**
101 Jefferson Drive
Menlo Park, California  94025-1114
Telephone:  (650) 838-4300
Facsimile:  (650) 838-4350
(Admitted *pro hac vice)*
LISA KOBIALKA
(Lkobialka@perkinscoie.com)
ESHA BANDYOPADHYAY
(EBandyopadhyay@perkinscoie.com)
SEAN BOYLE
(Sboyle@perkinscoie.com)

Attorneys for Plaintiff
THE FREECYCLE NETWORK, INC.


IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


| | |
|---|---|
| THE FREECYCLE NETWORK, INC., an Arizona non-profit organization,<br><br>     Plaintiff,<br><br>          v.<br><br>TIM OEY and JANE DOE OEY,<br><br>     Defendants. | CASE NO. CV 06-173 RCC<br><br>**THE FREECYCLE NETWORK, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED.R.CIV.P. 12(B)(2) FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:  June 16, 2006<br>Time:  11 a.m.<br>Judge:  Hon. Raner C. Collins<br>Location:  Tucson Courtroom 5B |

Dockets.Justia.com

# I.
# INTRODUCTION

The Freecycle Network, Inc. ("The Freecycle Network"), a non profit organization based in Arizona, is suing Tim Oey and Jane Doe Oey, individually, for Mr. Oey's intentional tortious conduct toward The Freecycle Network. Mr. Oey's tortious conduct toward The Freecycle Network, conduct which Mr. Oey has not disputed at all in any of his pleadings, constitutes trademark disparagement, injurious falsehood, defamation, and intentional interference with business relations.

Despite Mr. Oey's earlier opposition to The Freecycle Network's requested injunctive relief on the grounds that this dispute should be tried in a different forum, this Court issued a temporary restraining order and preliminary injunction against him. Oblivious of this Court's ruling, Mr. Oey came back with the same reasoning in his Motion to Stay or Transfer. No doubt afraid of losing his Motion to Stay or Transfer, Mr. Oey immediately filed the present Motion to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(B)(2) for Lack of Personal Jurisdiction ("Motion to Dismiss"). However, this Motion to Dismiss is nothing new, rather just one more frivolous attempt by Mr. Oey to evade adjudication of his substantive tortious conduct by employing procedural schemes.

It is interesting to observe that Defendants started their Memorandum in Support of Motion to Dismiss with *three* exclamation marks to emphasize that they are not Arizona residents and only visited Arizona once in 1994. Unfortunately, Defendants have mistakenly anchored their Motion to Dismiss on the absence of their physical contact with the forum state. As a matter of law, courts "have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . . ." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (citations omitted).

Indeed, personal jurisdiction is appropriate over Mr. Oey. There are abundant facts to establish the constitutionally mandated "minimum contacts" between Mr. Oey and the forum court based on Mr. Oey's earlier substantive contacts with The Freecycle Network and his later deliberate tortious activities toward The Freecycle Network. Moreover, Defendants have failed to

present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. As a result, Defendants' archaic and distorted understanding of the case law on personal jurisdiction warrants the denial of their Motion to Dismiss.

## II.
## FACTUAL BACKGROUND

**A.     The Freecycle Network**

The Freecycle Network is a non-profit corporation incorporated under the laws of the State of Arizona and provides forums for recycling and gifting in communities across the nation. Declaration of Lisa Kobialka in Support of The Freecycle Network's Opposition to Defendant's Motion to Dismiss filed herewith ("Kobialka Decl."), ¶ 2, Exh. A at ¶¶ 2-3. The Freecycle Network was founded in Tucson, Arizona, with a single recycling center and its only office and headquarters located in Tucson. *Id.*, Exh. A at ¶ 2.

For years, The Freecycle Network has been using the distinctive and now famous trademarks FREECYCLE and THE FREECYCLE NETWORK, as well as a company logo. *Id.*, ¶ 3, Exh. B at ¶¶ 5-6. These marks have been used exclusively and continuously and constitute the majority of The Freecycle Network's intellectual property. *Id.* To protect its intellectual property, The Freecycle Network has developed a Trademark and Copyright Policy. *Id.*, Exh. A at ¶¶ 7-8.

**B.     The Freecycle Network's Claims Against Mr. Oey**

Mr. Oey was an active member of The Freecycle Network from early 2004 until late 2005, holding a variety of important positions during this time including, but not limited to, (1) head of the New Website Planning Team for The Freecycle Network; (2) head of FreecycleNext; (3) was a member of The Freecycle Network's Penguin Patrol; and (4) a member of the Freecycle Modsquad. *Id.*, Exh. A at ¶¶ 4-7, 11. Holding these prominent positions, Mr. Oey was tasked with developing guidelines and policies for the protection of The Freecycle Network's intellectual property, including copyright and trademark protection, and providing suggestions and recommendations to The Freecycle Network's only office based in Tucson. *Id.* In fact, Mr. Oey personally drafted and developed The Freecycle Network's Trademark and Copyright Policy and

frequently commented on how to improve upon these guidelines and make these guidelines user friendly. *Id.*, Exh. A at ¶ 7.

On or around September 15, 2005, the professional relationship between The Freecycle Network and Mr. Oey came to an end because Mr. Oey's conduct was contrary to the mission of The Freecycle Network. *Id.*, Exh. B at ¶ 9. Based on information provided to The Freecycle Network, such conduct included charging money to members of the local group of The Freecycle Network with which Mr. Oey was a moderator. *See id.*

After being asked to step down from his position in The Freecycle Network, Mr. Oey began a direct attack on The Freecycle Network's intellectual property, including violating the policies he himself drafted and recommended, as well as encouraging others to do the same. *Id.* In fact, Mr. Oey personally disseminated instructions to third parties about how to violate The Freecycle Network's Marks. *Id.* Just recently, The Freecycle Network discovered yet another disparaging Internet posting by Mr. Oey found on http://www.grist.org.[1] *Id.*, ¶ 4, Exh. C. Due to Mr. Oey's destructive and tortious actions, The Freecycle Network has suffered damages to its good reputation, and goodwill, and is facing a significant risk of losing its corporate sponsorship, which has already been reduced due to its loss of reputation and goodwill. *Id.*, Exh. B at ¶ 10.

The Freecycle Network's claims for damages and injunctive relief are against Mr. Oey and his wife as individuals for contributory trademark infringement and trademark disparagement, injurious falsehood, defamation, and intentional interference with a business relationship. Ms. Oey is equally subject to the jurisdiction by virtue of her marriage to Mr. Oey pursuant to A.R.S. § 25-215(d) ("[i]n an action on such a debt or obligation the spouses shall be sued jointly and the debt or obligation shall be satisfied: first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation"); see also Spudnuts, Inc. v. Lane, 139 Ariz. 35, 36 (Ariz. Ct. App. 1984) (A.R.S. § 25-215(d) provides that if a plaintiff wants to hold a marital community accountable for an obligation, both spouses must be sued jointly). A

---

[1] The Freecycle Network's counsel will be addressing this issue immediately with Mr. Oey's counsel.

judgment against one spouse does not otherwise bind the community. Eng v. Stein, 123 Ariz. 343,
345-46 (Ariz. 1979). In light of the law, the following references to jurisdiction against Mr. Oey
justify jurisdiction against Ms. Oey as well.

**III.**
**ARGUMENT**

Personal jurisdiction is appropriate over Mr. Oey. The Ninth Circuit has established that
the Court can claim personal jurisdiction over a non-resident defendant if he has established
sufficient minimum contacts within the district. Doe v. Unocal, Inc., 248 F.3d 915, 923; see also
Hanson v. Denckla, 357 U.S. 235, 250-53 (1958). In addition, the Ninth Circuit has outlined a
three-part test to determine if a district court may exercise specific jurisdiction. Panavision
Intern., L.P. v. Toeppen, 141 F. 3d 1316, 1320 (9th Cir. 1998).[2] Mr. Oey has satisfied all three
steps of the Ninth Circuit's three-part test here. As described below, Mr. Oey has acted and
performed in such a manner that he has invoked the benefits and protections of the laws of this
Court. Additionally, The Freecycle Network's claims arise out of and result from Mr. Oey's
forum-related activities. Finally, exercise of jurisdiction is reasonable in light of Mr. Oey's
activities in Tucson and his failure to prove otherwise. *Id.*

### A.    Mr. Oey Has Purposefully Availed Himself of Tucson

The first requirement of the three-part test is whether Mr. Oey "purposefully avails himself
of the privilege of conducting activities in the forum, thereby invoking the benefits and protections
of its laws." *Id.* As discussed below, Mr. Oey has purposefully availed himself of Tucson
because of his earlier substantive contacts with Tucson, his statements made directed at the

---

[2] We agree with Defendant that a three-part test should be applied to determine if a district court may exercise specific jurisdiction. See Motion to Dismiss at 5. However, a check of Defendant's citation to "*Burger King*, 471 U.S. 462, at 472" reveals no such three-prong minimum contacts test as asserted by Defendant in its Motion to Dismiss. Id. Instead, the three-part test was expressly outlined by the Ninth Circuit in Panavision, 141 F. 3d at 1320. The Ninth Circuit stated that: "[w]e apply a three-part test to determine if a district court may exercise specific jurisdiction: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." Id., citing Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F. 3d 267, 270 (9th Cir. 1995).

- 4 -

Tucson-based The Freecycle Network, and the resulting harm from his conduct occurring in

Tucson.

### 1. Mr. Oey has purposefully availed himself of Tucson because of his substantive contacts with Tucson when he was an active member of The Freecycle Network

Purposeful availment means that Mr. Oey "[has] performed some type of affirmative

conduct which allows or promotes the transaction of business within the forum state." Unocal,

248 F.3d at 924, quoting Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990).

As described in detail in the fact section, Mr. Oey has affirmatively acted with respect to

The Freecycle Network and was intimately involved in numerous strategic business decisions for

The Freecycle Network on an *international* level. Indeed, his involvement with The Freecycle

Network cannot be understated. He was:

(1) the head of the New Website Planning Team,
(2) the head of FreecycleNext, a group formed by The Freecycle Network for all local member moderators worldwide,
(3) one of the few leaders of The Freecycle Modsquad, which was The Freecycle Network's main worldwide moderator group,
(4) a very active member of The Freecycle Network's Penguin Patrol and,
(5) the individual largely responsible for the implementation, drafting and execution of The Freecycle Network's Trademark and Copyright Policy.

Kobialka Decl., Exh. A at ¶¶ 4-11. Given these prominent roles in The Freecycle Network, Mr.

Oey did more than allegedly "sit at his computer in California and send emails"; he was, in fact, an

integral participant in the daily activities of The Freecycle Network. *Id.*

As he was active in these various roles that he held at The Freecycle Network, Mr. Oey

worked directly and closely with the founder of The Freecycle Network in his duties as one of the

leaders of these various groups, such as the Modsquad, critical to the success, growth,

development and strategic planning of The Freecycle Network. *Id.* He was the head of very

important projects critical to The Freecycle Network's mission and reported to The Freecycle

Network's Tucson office, the only office and headquarters of The Freecycle Network. *Id.* Thus,

there is no question that Mr. Oey has acted and performed so closely with The Freecycle Network

such that he has voluntarily subjected himself to jurisdiction in Tucson. Unocal, 248 F.3d at 923.

### 2. Mr. Oey has purposefully availed himself of Tucson because of his deliberate tortious activities toward The Freecycle Network, an Arizona resident

The Ninth Circuit has established that the requirement of "purposeful availment" is satisfied if the defendant "has taken deliberate action" toward the forum state. Panavision, at 1320, quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); see also Burger King, 471 U.S. at 472 ("this 'fair warning' requirement is satisfied if the [out-of-state] defendant has 'purposefully directed' his activities at residents of the forum") (citation omitted). The Ninth Circuit has further stated that "[i]t is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are 'purposefully directed' toward forum residents." Panavision, 141 F.3d at 1320.

In its Complaint, The Freecycle Network has pleaded sufficient facts to establish that Mr. Oey has taken "deliberate action" toward a forum resident. See Complaint for Trademark Disparagement, Injurious Falsehood, Defamation, Intentional Interference with Business Relations ("Complaint"), ¶¶ 17-19. For example, The Freecycle Network has pleaded that Mr. Oey "intentionally made false statements about The Freecycle Network's operation and the validity of The Freecycle Network's intellectual property, including The Freecycle Network's Marks." *Id.*, ¶ 17. In addition, The Freecycle Network has pleaded facts to establish that Defendant has attempted to intentionally and maliciously induce local recycling organizations to terminate their association with The Freecycle Network and misuse The Freecycle Network's trademarks. *Id.*, ¶ 19. As such, there is no question that Defendant has taken "deliberate action" toward an Arizona resident and thus purposefully availed himself of Arizona.

Moreover, Defendant has mistakenly anchored his Motion to Dismiss upon the absence of his physical contact with the forum court. The U.S. Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction . . . ." Burger King, 471 U.S. at 476 (citations omitted). The Ninth Circuit has echoed and expressly stated that exercise of personal jurisdiction does not require that "a defendant be physically present or have physical contacts with the forum, so long as his efforts are 'purposefully directed' toward forum residents." Panavision, 141 F.3d at 1320. Even though Defendant starts his Motion to Dismiss

- 6 -

with and later repeatedly emphasizes the fact that he resides in California and has only been in Arizona once (see Motion to Dismiss at 1-2, 4), in actual fact, whether Tim Oey is physically present in Arizona is not critical in the personal jurisdiction analysis. What is critical is whether the Defendant "has taken deliberate action" toward the forum state, which has already been established in the above analysis. Panavision, 141 F.3d at 1320.

### 3. Mr. Oey has purposefully availed himself of Tucson under the "effect doctrine"

Furthermore, the "purposeful availment" requirement can be satisfied by the "effects doctrine" as the Ninth Circuit has expressly endorsed in Panavision. See Panavision, 141 F.3d at 1321. The "effect test" was initially articulated by the U.S. Supreme Court to establish personal jurisdiction over non-residents for their intentional action aimed at the forum state. See Calder v. Jones, 465 U.S. 783, 791 (1984) ("We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California."). The "effect test" was later developed in an important cluster of cases, allegedly tortious Internet content, or allegedly tortious Internet activity, to subject a defendant to jurisdiction. 4A WRIGHT & MILLER Federal Practice & Procedure: Federal Rules Of Civil Procedure § 1073.1 (2005). The Ninth Circuit's approach set out in Panavision is "prototypical." *Id.* In Panavision, the Ninth Circuit has stated that: "Under *Calder*, personal jurisdiction can be based upon: '(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered-and which the defendant knows is likely to be suffered-in the forum state.'" Panavision, 141 F.3d at 1321 (citations omitted).

Applying the Ninth Circuit approach to the instant case, it is clear that the Court has personal jurisdiction over Defendants under the "effect doctrine." Defendant has committed intentional trademark disparagement conduct by publishing false and misleading statements regarding The Freecycle Network and its Marks to third parties through public e-mail lists and public Yahoo! Groups Web sites. Complaint, ¶ 18. Defendant's intentional and malicious conduct was expressly aimed at The Freecycle Network, a resident of Arizona, and its Marks. Complaint, ¶¶ 17-19. Defendant's deliberate and willful conduct was calculated to harm and has

indeed harmed The Freecycle Network's reputation and goodwill and its right in its Marks. Complaint, ¶¶ 23 & 28. Therefore, Defendant's assertion that "internet postings fall far short of the kind of conduct that courts have found sufficient to establish personal jurisdiction" is simply a misstatement of case law and cannot suffice as the basis for a motion to dismiss for lack of personal jurisdiction. See Motion to Dismiss at 5.

Therefore, Mr. Oey has purposefully availed himself of Tucson, and the first requirement of the three-part test is met.

### B. The Claims Arise Out of Mr. Oey's Forum-Related Activities

The second requirement for specific personal jurisdiction is that the asserted claim arise out of the defendant's forum-related activities. Panavision, 141 F.3d at 1322. As the above analysis indicates, Mr. Oey's deliberate activities disparaging The Freecycle Network and its Marks constitute forum-related activities. As such, The Freecycle Network's claims against Mr. Oey for trademark disparagement and other related claims arise out of Mr. Oey's forum-related activities.

In addition, the second requirement is satisfied by the "but for" test applied by the Ninth Circuit. See Panavision, 141 F.3d at 1322 ("We must determine if the plaintiff [] would not have been injured 'but for' [defendant's] conduct directed toward [plaintiff] in California.") (citation omitted). Mr. Oey's disparaging remarks regarding The Freecycle Network and its Marks had the effect of injuring The Freecycle Network's goodwill and reputation in Arizona. But for Defendant's conduct, this injury would not have occurred. Therefore, The Freecycle Network's claims arise out of Defendant's Arizona-related activities.

Furthermore, this underlying dispute centers around Mr. Oey's decision to act in a manner completely contrary to his previous activities and the recommendations he himself made when he was involved with The Freecycle Network as a head of numerous strategic and planning committees vital to The Freecycle Network's existence. For example, claims in this case involve his instructions on how to violate The Freecycle Network's Trademark and Copyright Policy (that he himself drafted) and destroy the goodwill in The Freecycle Network's trademarks (that he

- 8 -

himself had previously sought to protect).  Kobialka Decl., Exh. A at ¶¶ 7-10, Exhs. 1-2.  Thus, as

described above, there can be no question that The Freecycle Network's claims arise out of Mr.

Oey's forum-related activities.  <u>Unocal</u>, 248 F.3d at 923.

### C.   The Exercise of Jurisdiction is Reasonable

In his Motion to Dismiss, Defendant listed five factors to determine the fairness of

exercising jurisdiction.  However, it is unclear where the five factors come from, as Defendant

provided no citation to indicate the source of the five factors.  <u>See</u> Motion to Dismiss at 6.  Nor

did Defendant explain how the five factors apply to the instant case and why they support his

position.  *Id.*  Defendant simply stated that "[m]ost of these factors have been briefed ad nauseam

in Defendant's Motion to Transfer, incorporated herein by reference."  *Id.*  Because Defendant has

failed to specify which part of his Motion to Transfer was incorporated by reference, The

Freecycle Network is at a further loss to understand which, if any, factors weight in favor of the

Defendant.

Defendant's failure to present why this Court's exercise of jurisdiction is unreasonable

warrants the denial of the Motion to Dismiss.  As the U.S. Supreme Court has stated, "where a

defendant who purposefully has directed his activities at forum residents seeks to defeat

jurisdiction, he *must present a compelling case* that the presence of some other considerations

would render jurisdiction unreasonable."  <u>Burger King</u>, 471 U.S. at 477 (emphasis added).  As the

above discussion has established, Mr. Oey has "purposefully directed" his activities at a forum

resident.  This fact in turn placed the burden on Mr. Oey to "present a compelling case that the

presence of some other considerations would render jurisdiction unreasonable."  <u>Panavision</u>, 141

F.3d at 1322 (quotation omitted).  Mr. Oey's failure to meet this burden demands the denial of his

Motion to Dismiss.

Furthermore, The Freecycle Network has demonstrated the fairness and reasonableness of

the exercise of jurisdiction in its Opposition to Defendants' Motion to Stay or Transfer.  <u>See</u>

Opposition to Motion to Stay or Transfer at 9.  In particular, there would be significant hardship to

The Freecycle Network if the case was dismissed in The Freecycle Network's home forum where

The Freecycle Network, its founder and all of its board members, as well as relevant documentation, are located. In addition, this Court has had before it extensive motion practice involving The Freecycle Network's *Ex Parte* Motion for Temporary Restraining Order, Motion for Preliminary Injunction, and Motion for Order to Show Cause, which have included several oral arguments and an evidentiary hearing involving the examination of Mr. Beal. Dismissing the case will result in an enormous waste of judicial resources given the Court's familiarity with the details and facts of this case. In contrast, continuing the lawsuit in Tucson does not create any hardship on Defendants who have had Tucson-based counsel involved since the outset of this litigation. Accordingly, the consideration of the above factors justifies the reasonableness and fairness of jurisdiction in Tucson.

## IV.
## CONCLUSION

For the foregoing reasons, The Freecycle Network respectfully requests this Court deny Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.


DATED: May 25, 2006                                    **PERKINS COIE LLP**


                                                       By ____/s/ Lisa Kobialka_____
                                                           Lisa Kobialka

                                                       Attorney for Plaintiff
                                                       THE FREECYCLE NETWORK, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2006, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Ashley Lynn Kirk, HAYES SOLOWAY P.C.

s/ Leslie Shields